Frank Lee SPRATLEY, Appellant,

v.

E. L. PADERICK, Superintendent of the Virginia State Penitentiary, Appellee.

No. 74–1326.

United States Court of Appeals, Fourth Circuit.

Argued March 5, 1975.

Decided Nov. 25, 1975.

George K. Walker, Winston-Salem, N.C. (Court-appointed) (Wake Forest University School of Law, on brief), for appellant.

Gilbert W. Haith, Asst. Atty. Gen. of Va. (Andrew P. Miller, Atty. Gen. of Virginia, on brief), for appellee.

Before HAYNSWORTH, Chief Judge, WIDENER, Circuit Judge, and HALL,* District Judge.

PER CURIAM:

The petitioner sought a writ of habeas corpus, claiming that he was convicted by a jury selected in a racially discriminatory manner. The district court denied the petition. We disagree and find that the petitioner has made out a *prima facie* case of discrimination, but that the state must have an opportunity to present evidence in rebuttal of that showing.

On February 2, 1966, an Isle of Wight County, Virginia jury convicted Frank Lee Spratley, a Negro, of attempting to rape a white woman and of burglary. He was sentenced to life and twenty-five years imprisonment. At his trial petitioner's counsel moved to quash the venire on the ground that it had been discriminatorily constituted, but the trial court overruled the motion without a hearing. Later, in state postconviction proceedings, the Virginia Supreme Court of Appeals ordered a hearing on the question. After it was held, the trial

* District Judge, sitting by designation.

court again denied relief, and that decision was affirmed.

The record from the state hearing reveals that in Isle of Wight County, according to the 1960 census, 46.4 percent of the presumptively eligible voters were Negroes and that in the 1970 census 42.6 percent of them were blacks. The method of jury selection also appears in the record. Each year a group of jury commissioners would select names for a jury master list.[1] From 1961–1965, one of the four members of the Commission was a Negro. Just how the commissioners accomplished their task, however, is not entirely clear. The court clerk would provide them with land and tax registry books, but they apparently could select jurors from outside the books. The commissioners, however, were required to select only persons of "good repute for intelligence and honesty,"[2] and in its brief the state concedes that to make such a choice, a commissioner must know the individual. Once the commissioners had made up the master list, the names on it were placed on papers in a box. Disinterested persons would then randomly select venires from that box.

In 1965 and the four preceding years, the percentage of Negroes on the jury master list ranged from a low of 11.7 percent to a high of 21.4 percent.[3] In 1965 blacks made up 16 percent of the master list. The petitioner presented little evidence on the numbers of blacks actually serving on Isle of Wight County juries. In the jury panel selected for Spratley's trial, however, four members were blacks, but since the prosecutor struck all four on peremptory challenges, no Negro actually served. Petitioner's

trial attorney testified that there were always a few Negroes on juries in that county, but the extent of his trial experience there was limited.

■ Undeniably, the Constitution forbids racial discrimination in the selection of juries. *Alexander v. Louisiana,* 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); *Whitus v. Georgia,* 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967). A showing of a substantial disparity between the proportion of eligible Negroes in the county's population and their proportion on juries establishes a *prima facie* case of racial discrimination, if it is coupled with positive proof of racial discrimination or with a showing that the selection process left open an opportunity for discrimination.

■ In this case the divergence between the proportion of blacks in the population presumptively eligible for jury service (approximately 44 percent) and the proportion of blacks on the master list (16 percent in 1965) was extreme. In each of the five years considered, the disparity approached or exceeded the two-to-one disparity that we have already condemned. *Stephens v. Cox,* 4th Cir., 449 F.2d 657. The showing in this case differs in one respect from that in *Stephens.* In that case the petitioner presented statistical evidence concerning the representation of Negroes on venires in addition to their representation on the master list. Nevertheless, we do not deem the difference crucial because the drawing of venires from the box was admittedly at random and thus not susceptible to weighting in favor of one race. After the selection of a number of venires, presumably the proportion of

1. Va.Code §§ 8–174, 175, 178, 182 (1936, repealed 1973).

2. Va.Code § 8–181 (1918, repealed 1973).

3.

| Year | Total | Negroes | Percent |
|------|-------|---------|---------|
| 1961 | 273 | 37 | 13.6% |
| 1962 | 334 | 42 | 12.6 |
| 1963 | 266 | 31 | 11.7 |
| 1964 | 285 | 61 | 21.4 |
| 1965 | 262 | 42 | 16.0 |

Since the jury commissioners were selected and performed their duties each year in February, the 1965 jury commission and master list are the ones applicable to Spratley's trial. The state points out that the testimony concerning the 1962 figures may be incorrect as there was a statutory maximum of 300 for the master list. Va.Code § 8–182. The state's proposed figures would place the percentage of Negroes on the list at 14.8%, which would not affect the result in this case.

Negroes on all venires approximated the proportion on the master list. In *Wansley v. Slayton,* 4th Cir., 487 F.2d 90, the petitioner introduced some evidence tending to indicate a disproportionately small representation of blacks on a grand jury list. The state, however, introduced testimony that there was never fewer than one black on grand juries of five to seven members and thus that the Negroes on the list apparently served more often than the whites. In this case, however, there is now no evidence that such a thing occurred or that the selection method made it possible.

The *Stephens* case involved a selection method similar to the one used in Isle of Wight County. We held that the opportunity to discriminate arose when the jury commissioners selected individuals whom they personally knew, just as they did in this case. Accordingly, we decide, as we did before, that the petitioner has established a *prima facie* case of racial discrimination in jury selection. We do not find, however, that the petitioner's showing is conclusive and remand the case for a hearing to afford the Commonwealth an opportunity to rebut the *prima facie* case. The state may be able to carry its burden of proof by establishing any of the possibilities mentioned in *Stephens* or by proof of some other circumstance showing that the disparity in the representation of blacks on juries was due to something other than discrimination.

Of course, during the further proceedings, the petitioner, too, should be afforded an opportunity to offer additional relevant evidence.

■ On this appeal from the dismissal of his habeas petition, Spratley raises several other issues. He claims that the prosecution suppressed evidence that tended to exculpate him. We find no merit in the allegation and affirm the dismissal for the reasons stated by the district court. Additionally, the petitioner argues that pretrial identification procedures were impermissibly suggestive and tainted his later identification by the victim, that an involuntary confes-

sion was obtained from him, and that his trial counsel was ineffective. As to those points, the petitioner has not exhausted his state court remedies, and the issues were not properly presented in a federal habeas petition. 28 U.S.C. § 2254(b).

Accordingly, we reverse the dismissal of the petition and remand for a hearing on the state's rebuttal to the *prima facie* case of racial discrimination.

*Affirmed in part, reversed in part, and remanded.*