# Richmond

## Samuel C. Carratt, Jr. v. Commonwealth of Virginia.

June 10, 1974.

Record No. 730213.

Present, All the Justices.

*J. Harry Michael, Jr.; Richard H. Barrick (Michael, Dent & Brooks; Wingfield, Barrick & Feil,* on brief), for plaintiff in error.

*Gilbert W. Haith, Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

Harrison, J., delivered the opinion of the court.

Samuel C. Carratt, Jr. was indicted for operating, conducting and being concerned in managing a lottery commonly known as the numbers game, or the numbers racket, in violation of Virginia Code § 18.1-340. He was convicted of possession of numbers, records and paraphernalia. He appeals the judgment of the lower court fixing his punishment at confinement in jail for one year and a fine of $500 in accordance with the verdict of the jury.

On July 16, 1972 an affidavit was made for a warrant to search the premises of Carratt in Albemarle County in relation to an offense described as "conducting, financing, managing, supervising, directing or owning an illegal gambling business; Section 18.1-318.1 Virginia Code". A warrant was issued commanding a search of the premises of the defendant, and reciting that the premises "unlawfully contains, contrary to law, numbers, lottery tickets, adding machines, tapes, tally sheets, books and records used in numbers operation, rice paper, flash paper, telephone bills, money and other paraphernalia made, provided or procured for running a lottery; and money". The officers searched the premises and seized from defendant's dwelling the sum of $3,861 in currency of various denominations, $65.50 in rolled coins, $31.85 in loose change, and various other items and articles that are commonly identified with the operation of the numbers game.

Thereafter Carratt was indicted for conducting an illegal gambling business in violation of Code § 18.1-318.1. The defendant filed a motion to suppress the evidence obtained in the search on the grounds that the search warrant was defective and that it was illegally executed. The court below upheld the validity of the warrant and the manner in which it was executed. However, the court found that, although the affidavit for the search warrant indicated that the search was desired incident to a violation of Code § 18.1-318.1 (which concerns "Conduct of illegal gambling business"), the language of the warrant itself indicated that it was issued to search for evidence incident to a violation of Code § 18.1-340 (which concerns "Managing, etc. a lottery, etc. of buying, selling, etc. chances"). The court held that the evidence seized could only be used in a prosecution for a violation of Code § 18.1-340, and not in the prosecution of the indictment which was then pending against the defendant charging a violation under Code § 18.1-318.1. The Commonwealth's Attorney, in view of this ruling by the trial judge, procured an indictment from a special grand jury charging the defendant under Code § 18.1-340. The defendant's pretrial motion to suppress the evidence was renewed prior to his trial on the new indictment, and all of the proceedings that occurred previous thereto were incorporated by reference into the record of the case under review.

This appeal presents two questions: (1) Did the trial court err

in failing to exclude the evidence seized under the search warrant on the ground that it was illegally executed by officers who made a no-knock entry into the defendant's dwelling; and (2) did the trial court err in admitting such evidence on the ground that the warrant failed to specify the offense in relation to which the search was to be made.

The Commonwealth contends that a no-knock entry was justified because of exigent circumstances. Carratt's home was searched about 6 A. M. on July 16, 1972. While other officers were present we are concerned primarily with the actions of Lt. James L. Higgins, Jr., of the Albemarle County Sheriff's Department, and Criminal Investigator Carl R. Deavers, Jr., of the Virginia State Police. According to the testimony of these two officers the home was completely surrounded by officers, and Higgins and Deavers advanced to the two front doors of the residence. Higgins said they first sought entry through the left front door which was found locked. Deavers knocked on the storm door and, receiving no response, the officers went to the right front door where they again knocked. The officers then pulled open the storm door and gained entrance through the main door by forcing it. He said that at both doors they announced their presence and identified themselves as officers. He estimated that they were at the doors about a minute before their forced entry was made into the dwelling. The trial court held that this constituted a no-knock entry but that it was justified because of exigent circumstances. We agree.

The defendant was believed by the officers to be the head or banker of an extensive numbers operation in the Charlottesville-Albemarle area. For more than a year he and numerous others, allegedly a part of his organization, had been under police surveillance. On July 15, 1972 the officers had reason to believe that Carratt had obtained knowledge that he was under investigation, and they concluded that a search of his premises should be made without delay. These officers also had the benefit of information from a reliable source who was described as a respectable citizen of the Charlottesville-Albemarle community and as having given information on six prior occasions in a three-month period that had led to the arrest and conviction of felons. This informant advised Deavers that he "should be careful" for the defendant owned a .38 calibre weapon which he kept loaded in the vicinity

of his bedroom and that defendant "was capable of using this weapon"; and further that "Mr. Carratt would destroy the evidence if he had any idea whatsoever that the police officers were coming to his home". The officers had information that in his operations Carratt used rice paper, described as being soluble, and flash paper, described as a type of paper associated with the numbers game, which if touched against any spark whatever is immediately consumed and destroyed "just in a matter of a second".

It was known to the officers that Carratt had "a very large dog" that was seen routinely on the outside of the residence. The officers thought this dog to be vicious and they assigned one officer to keep the dog from biting anyone during the search. When the officers approached the dwelling to execute the search warrant the dog immediately started barking and continued barking after they had entered the dwelling.

We considered the circumstances under which a "no-knock entry" could be made in *Johnson* v. *Commonwealth*, 213 Va. 102, 189 S. E. 2d 678 (1972). There we pointed out the exceptions and qualifications to the general rule which requires that before police officers may resort to a forced entry they must identify themselves and make their purpose known. We said:

> "These exceptions have been made because of exigent circumstances and where the facts make it evident that the officers' purpose is known, or where announcement might frustrate the arrest, increase the peril of the arresting officer or permit the destruction of evidence. . . ." 213 Va. at 104, 189 S. E. 2d at 679-80.

In *Johnson* the police officers, armed with a warrant to search for drugs, justified their rapid entry into Johnson's apartment on the grounds that they had reliable information that the apartment was a place from which illegal drugs were being dispensed; that they knew the door to the apartment was protected by two locks and people seeking entry were placed under surveillance before being admitted; and that they knew drugs were being stored and dispensed from the kitchen, a point only 3 to 4 feet from the bathroom where there were two receptacles which could have been used to dispose of and destroy evidence.

In the case under review the exigent circumstances were even

greater. The officers had reason to believe that the defendant was armed and dangerous; that he had discovered that he was under surveillance; and that he was most likely anticipating a search and prepared to destroy any incriminating evidence if given the time and opportunity. It was therefore reasonable for the officers to have believed that any delay in entering the dwelling of defendant would frustrate their undertaking, increase their peril and permit the destruction of the evidence.

■ We next consider whether the affidavit and the warrant properly described the offense in relation to which the search was to be made.

Code § 19.1-85 prescribes the affidavit that must be made preliminary to the issuance of a search warrant. It specifies that it allege "substantially the offense in relation to which such search is to be made", and that no warrant be issued on an affidavit omitting such essentials.

Rule 3A:27 of the "Rules of Criminal Practice and Procedure" of this court provides that an affidavit for a search warrant shall, among other things, state "that the property constitutes evidence of a crime (identified in the affidavit), or tends to show that a person (named or described therein) has committed or is committing a crime (identified therein)". This Rule also specifies that the warrant to be issued by the magistrate "recite the offense in relation to which the search is to be made" and "recite that the magistrate has found probable cause to believe that the property constitutes evidence of a crime (identified in the warrant) or tends to show that a person (named or described therein) has committed or is committing a crime".

Attached to the "Rules of Criminal Practice and Procedure" is an appendix of forms, including a form search warrant. A footnote to this form indicates that in preparing a search warrant, and in describing the offense in relation to which the search is to be made, the magistrate shall "Give a brief description of the offense in relation to which the search is to be made, e.g., the murder of John Doe; possession of narcotics".

We think it obvious that the statute and Rules of Court contemplate that both in the affidavit for a search warrant, and in the warrant itself, the offense in relation to which the search was to be made should be identified briefly and in general terms rather than in the precise and legalistic language usually found in an indictment, a presentment or an arrest warrant. The object

is to apprise the subject of the search of the offense being investigated and the evidence sought, and to advise the officers in advance as to what they are to be searching for. The words "operating a numbers game" or "running a lottery" are as specific as the words used in the footnote to Rule 3A:27, i.e., "the possession of narcotics". Drugs seized under a search warrant in which the offense was described as "the possession of narcotics" could be used as evidence in the prosecution of a number of drug related offenses described under the Virginia Drug Abuse Law — some felonies and some misdemeanors. A fortiori, gambling paraphernalia seized under a search warrant, which described the offense in relation to which the search was made as a "lottery", or a "numbers operation", would be admissible as evidence in a prosecution of a number of different offenses described in different sections of the Virginia Code dealing with lotteries and gambling.

The articles searched for under the Carratt warrant were described in the affidavit and in the warrant itself and were items or articles common, necessary and incidental to the operation of a numbers game or racket. The officers could have been under no misapprehension as to the place they were to search, the reason for the search, the articles to be searched for, and the fact that these articles were allegedly being used in a gambling operation known as the numbers game. Neither could the defendant have been misled in any particular, or been in any doubt from the wording of the search warrant, that his premises were being searched for certain specified articles alleged to be unlawfully held and used in connection with a gambling operation known as the numbers game.

Clearly the search warrant concerned a violation of Code § 18.1-340 which, in the language of *Artis* v. *Commonwealth*, 213 Va. 220, 223, 191 S. E. 2d 190, 192 (1972), "in effect prohibits a person from being *concerned* with or *aiding* in managing and drawing a lottery and from having in his possession tickets, chances, writings, etc. under certain conditions for certain purposes". In *Artis* we held the numbers game to be a form of illegal lottery and a form of illegal gambling, and that the sale, possession of the evidence of the sale, collection of the slips, and delivery of them, and the money, are all necessary steps in the operation of a numbers racket. We said that each step is a part of the operation and each step aids in its conduct.

The defendant says that the evidence is inadmissible because the search warrant did not refer to any specific section of the Code, whereas the affidavit for the warrant specifically referred to Code § 18.1-318.1. This section prohibits any person from conducting, financing, managing, supervising, directing or owning all or part of an illegal gambling business. It defines gambling as including "conducting lotteries . . . or numbers games" and defines illegal gambling business as "a gambling business which . . . [i]nvolves five or more persons who conduct, . . . all or part of such business".

It can be argued convincingly that, regardless of which section the Commonwealth's Attorney had elected to prosecute under, the evidence seized from the defendant's residence would have been admissible. In *Artis* the search was made because the defendant there, and his companions, were suspected of gambling. When the search was conducted evidence was uncovered which disclosed that Artis was operating or concerned in the numbers racket. We held, notwithstanding the original purpose of the search, "the amount of currency found there . . . was also relevant evidence in the prosecution of defendant for operating a numbers game" in violation of Code § 18.1-340. *Id.* at 224, 191 S. E. 2d at 193.

We have examined the authorities cited by counsel for defendant. In the main they involve search warrants that are fatally defective in one or more vital particulars. We find no valid objection to either the affidavit or the search warrant in the case under review. The mere fact that the warrant did not refer to the same Code section as the affidavit is of no consequence. What is important is that the warrant clearly and substantially described and identified the criminal violation in relation to which the search was being made.

The trial court's ruling that the evidence seized could not be used in a prosecution of Carratt for a violation of Code § 18.1-318.1 is not before us. We find no error in its holding that the search warrant sufficiently identified the offense in relation to which the search was made as the operation of a numbers game, and that defendant's prosecution under Code § 18.1-340 was proper.

For the reasons given the judgment of the lower court is

*Affirmed.*