## Salem

LEIF ERIC MOATS, s/k/a
LIEF ERIC MOATS

v.

COMMONWEALTH OF VIRGINIA

No. 1427-89-3

Decided April 23, 1991

Counsel

Sa'ad El-Amin, for appellant.

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

Opinion

MOON, J.—The appellant, Lief Eric Moats, was convicted by a jury of first degree murder, robbery, and the use of a firearm in the commission of murder, for which he was sentenced to life, forty years, and two years imprisonment, respectively. On appeal, he argues that his convictions should be reversed because: (1) the jury panel before which he was tried contained no African-Americans; (2) the trial court denied his request to be permitted to impeach the prosecution's witnesses with prior juvenile convictions; (3) the trial court refused to suppress evidence obtained in a search of his home and car even though relevant facts had been excluded from the affidavit; and (4) the evidence was insufficient for the court to grant instructions on first and second degree murder and to support a conviction of first degree murder. Finding no reversible error, we affirm the convictions.

On appeal, we construe the evidence in the light most favorable to the Commonwealth, granting to it all inferences fairly deducible therefrom. *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). On December 5, 1988, Leo Coolidge was found dead in the Mt. Sidney Food Market, a convenience store he operated. He was shot in the back three times with .38/.357 caliber bullets. Eric Moats admitted to Devon Smith that he and his two brothers, Stacy and Kim, went to the Mt. Sidney Food Market and robbed and killed Coolidge. Before the robbery, appellant showed Smith a pistol he kept under the seat of his car. Appellant told Smith that he and Stacy Moats went into the convenience store while his brother, Kim Moats, waited outside in the car. Appellant stated that he took approximately $200 from Coolidge. During the robbery, Coolidge reached under the counter and appellant shot him in the back three times.

Some time after the robbery but before Christmas, appellant tried to sell a .38 caliber handgun to Roger Keener. Keener testi-

fied that he and the appellant test-fired the gun into a fencepost. The ballistic characteristic of the slugs removed from the fencepost matched those found in the body of the victim. Keener's account was corroborated by Jeffrey Argenbright, who was present during the attempted sale.

Devon Smith was a friend of the Moats brothers. Notwithstanding the friendship, he went to the police and offered assistance in their investigation of the murder of Coolidge in the hope of obtaining leniency for his mother who had been arrested on charges of distribution of cocaine.

Appellant first asserts that it was error for the trial court to refuse to quash venire panel because of the absence of African-Americans on the jury panel. To prevail on this issue, the appellant "must demonstrate purposeful or deliberate exclusion of blacks from jury service on the basis of race. Such discrimination 'may not be assumed or merely asserted' but must be proved." *Watkins v. Commonwealth*, 229 Va. 469, 492, 331 S.E.2d 422, 438 (1985), *cert. denied*, 475 U.S. 1099 (1986) (quoting *Swain v. Alabama*, 380 U.S. 202, 203 (1965)). In the *Watkins* case, as in this case, the defendant was African-American, the victim was white, and all members of the jury were white. The Court stated: "[A] black defendant is not constitutionally entitled to a jury containing members of its own race." *Id*. at 492, 331 S.E.2d at 438.

"A defendant does have a constitutional right, however, to be tried by jury members selected pursuant to neutral and non-discriminatory guidelines." *Gray v. Commonwealth*, 233 Va. 313, 335, 356 S.E.2d 157, 169, *cert. denied*, 484 U.S. 873 (1987). An accused makes out a prima facie case of racial discrimination by "[a] showing of a substantial disparity between the proportion of eligible [blacks] in the county's population and their proportion on juries . . . coupled with positive proof of racial discrimination or with a showing that the selection process left open an opportunity for discrimination." *Spratley v. Paderik*, 528 F.2d 733, 734 (4th Cir. 1975).

"Actually, whether the presence of a few [blacks] on a venire containing many names is evidence tending to prove or disprove racial discrimination depends upon the proportion of [blacks] and whites who are qualified for jury service. . . . Fairness in selection does not require proportionate represen-

tation of race upon a jury venire."

*Hairston v. Peyton*, 268 F. Supp. 229, 232 (W.D. Va. 1967) (quoting *Brown v. Allen*, 344 U.S. 443 (1953)).

■ "Assessing the fairness and reasonableness of a group's representation requires a comparison between the percentage of the 'distinctive group' on the qualified jury wheel and the percentage of the group among the population eligible for jury service in the division." *United States v. Rodriguez*, 776 F.2d 1509, 1511 (11th Cir. 1985). The Commonwealth has stipulated that Augusta County is four percent black and that no blacks were called for jury duty. The record establishes that "almost one hundred" potential jurors were called. Of this original number, one African-American, Mr. Vaughn, was summoned. Mr. Vaughn was on vacation at the time and was excused from jury service at his own request. The record fails to establish the total population of Augusta County, which would be necessary to make a meaningful statistical comparison to determine the probability that this outcome was due to random chance. Appellant elicited testimony that it was common for felony cases in Augusta County to be tried by all white juries; however, appellant failed to offer numerical evidence to indicate the proportion of African-Americans that historically have served as jurors in Augusta County.

Under similar circumstances, courts have sustained verdicts returned by all white juries. *See Robertson v. Riddle*, 404 F. Supp. 1388 (W.D. Va. 1975); *Gray*, 233 Va. at 335-38, 356 S.E.2d at 169-71; *Watkins*, 229 Va. at 491-92, 331 S.E.2d at 438-39. Courts regularly uphold convictions where the disparity between African-Americans in the population and those serving on juries exceed the difference found in this case. *See United States v. Tuttle*, 729 F.2d 1325 (11th Cir. 1984), *cert. denied*, 469 U.S. 1192 (1985); *United States v. Pepe*, 747 F.2d 632, 648-49 (11th Cir. 1984); *see generally Rodriguez*, 776 F.2d at 1511 ("Although precise mathematical standards are not possible, this circuit has consistently found that a prima facie case of underrepresentation has not been made where the absolute disparity between the percentages does not exceed ten percent").

■ Assuming for argument's sake that appellant's evidence was sufficient to establish a substantial disparity, the record contains no evidence of intentional racial discrimination or that the selec-

tion process left open the opportunity for such discrimination. Code § 8.01-345 is made applicable to the selection of criminal juries by Code § 19.2-260. Code § 8.01-345 requires that "jury commissioners shall utilize random selection techniques, either manual, mechanical or electronic, using a current voter registration list and . . . other such lists as may be designated and approved by the chief judge of the circuit, to select jurors . . . to be placed on the master jury list." The evidence adduced shows that jury commissioners never hand-picked jurors. The jury selection process in Augusta County is done by random computer selection from the voter registration list. The voter registration list does not indicate the race of the prospective jurors and jury commissioners have no way of knowing the race of prospective jury members until they arrive. Code § 8.01-345 sets out the procedure for jury selection and no evidence suggests that this selection process was not followed. Based on this evidence, appellant has failed to show intentional racial discrimination or that the juror selection process left open this opportunity. For these reasons, we hold that appellant's evidence was insufficient to establish a prima facie case of racial discrimination.

■ Appellant contends that he was denied his right to confront witnesses because he was not permitted to use juvenile convictions for impeachment purposes. The "defendant's right of confrontation is paramount to the State's policy of protecting juvenile offenders, so that the right effectively to cross-examine a witness to show bias, a *specific* attack on the credibility, outweighs any embarrassment to the witness resulting from a disclosure of his juvenile court record." *Fulcher v. Commonwealth*, 226 Va. 96, 99, 306 S.E.2d 874, 876 (1983) (emphasis added) (citing *Davis v. Alaska*, 415 U.S. 308 (1974)). However, a court may refuse the use of juvenile convictions in a general attack on witness credibility. *Kiracofe v. Commonwealth*, 198 Va. 833, 97 S.E.2d 14 (1957). The issue thus becomes whether the appellant sought to use the juvenile convictions to demonstrate that the witness was biased or whether instead he sought to use the juvenile convictions to attack generally the witness's credibility. In *Scott v. Commonwealth*, 7 Va. App. 252, 372 S.E.2d 771 (1988), *cert. denied*, 490 U.S. 1095 (1989), the Court held that, in the absence of a claim that the witness's prior adjudiciation involved the accused, a showing of bias, prejudice or ulterior motive would not be involved. There was no such contention in the case. Here, the trial judge

permitted appellant to question witnesses about juvenile probation to show the possibility that the witnesses were trying to curry favor with probation officers or law enforcer officials. Thus, we hold that appellant was not improperly denied his right to cross-examine the witnesses.

We turn next to appellant's assertion that the evidence seized pursuant to search warrants should have been suppressed because the affidavits in support of the warrants contained deliberate falsehoods. The warrants in question permitted the police to search appellant's home and car for a .38/.357 caliber pistol, ammunition, a black leather ammunition carrier and light color sweat clothing. Appellant asserts that Officer Fisher in preparing the affidavit made deliberate false statements and omissions and that had they been properly stated, the search warrant would have been denied for lack of probable cause.

The false statements to which the appellant objects are attributed to information given the police by the informant Devon Smith. In the affidavit, the police asserted that the informant told the officer that he had seen the gun in appellant's car after the murder. This assertion was not supported by the information in Smith's recorded statement. Smith's statement indicates that he saw the gun in appellant's car prior to the murder/robbery and that at the time he made his statement he believed that appellant had sold the gun to a "truck driver." The officer attributed the inconsistencies in the affidavit to a misunderstanding and to additional information he solicited from Smith in an "off-the-record" conversation. The officer indicated that he believed Smith had twice seen the gun in appellant's possession, once before and once after the robbery. The officer indicated that he had "truly believed" the facts that were set forth in the affidavit. The trial court resolved this issue in the Commonwealth's favor, finding neither a deliberate nor reckless falsehood. Those findings are not reversible unless plainly wrong or not supported by the evidence. Since the findings are neither plainly wrong nor unsupported by the evidence, the ruling must stand.

Appellant further contends that probable cause would not have been found had the officer included in the affidavit two relevant facts. The omissions at issue are the fact that Smith believed the gun had been sold and that another witness, Ms. Miller, at the approximate time of the murder/robbery, stated that she saw two

white men in light colored sweat clothing running from the convenience store.

  Even if these statements were included in the affidavit, the affidavit still would have supported a finding of probable cause. Other information in the affidavit indicated that appellant admitted to Smith that he committed the murder/robbery. Smith's account included the number of shots and the amount of money taken in the robbery, which were not public facts. Further, the affidavit stated that, according to another informant, appellant still had the murder weapon in January, which was after the December 7 murder/robbery. The affidavit also stated that Jeffrey Argenbright and Roger Keener were present prior to Christmas when the appellant attempted to sell Keener the "murder weapon." During this meeting, appellant and Keener test-fired the weapon into a fence post. The ballistic characteristics of the slugs taken from this test firing matched those on the bullets found in the victim's body. The Commonwealth is not required to include all of its information in an affidavit and, therefore, was not required to include in its affidavit the account of Ms. Miller in which she claimed to have seen two white men running from the convenience store. *United States v. Liberti*, 616 F.2d 34, 37 (2d Cir.), *cert. denied*, 446 U.S. 952 (1980). Thus, we hold that the affidavits were not constitutionally defective and the trial court did not err in refusing to suppress the evidence.

Appellant was indicted for capital murder but found guilty of first degree murder. Appellant contends that he was guilty of capital murder or not guilty at all. He asserts that the evidence established that he held the victim at gun point, demanded money and shot the victim three times. Thus, the evidence established that appellant was the "trigger man" in a murder committed in the course of a robbery, a capital murder offense. Appellant asserts that it was improper for the trial judge to give instructions on first and second degree murder because there was no evidence to support a first or second decree murder instruction and that the evidence was insufficient to support a conviction beyond a reasonable doubt of murder in the first degree.

  The jury has "the right to reject that part of the evidence believed by them to be untrue and to accept that found by them to be true." *Belton v. Commonwealth*, 200 Va. 5, 9, 104 S.E.2d 1, 4 (1958). The jury could have found that the shots were fired by

appellant in a fearful response to the victim reaching under the counter. From this, the jury could have found that the killing was not willful, deliberate and premeditated. Under these circumstances, the court properly instructed the jury as to the crime of felony murder. Felony murder under these circumstances is murder in the first degree. *See* Code § 18.2-32. The error, if any, in granting the second degree murder instruction is harmless. The instruction provided: "If you do not find from the evidence that the defendant is guilty of capital murder or first degree murder, then you may consider the crime of second degree murder." Therefore, having found the appellant guilty of first degree murder, the jury did not consider the instruction of second degree murder. *Cf. Jarrell v. Commonwealth*, 132 Va. 551, 110 S.E. 430 (1922).

Finding no reversible error, the judgment is affirmed.

*Affirmed.*

Coleman, J., and Keenan, J., concurred.