## Norfolk

FRANK ROBERT WEST, JR.

v.

COMMONWEALTH OF VIRGINIA

No. 2051-91-1

Decided June 29, 1993

COUNSEL

Sydney K. L. West (Horne & West, P.C., on brief), for appellant.

Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, J.**—Frank Robert West, Jr. (West) appeals from his jury trial conviction for possession of stolen property. On appeal, West contends that the trial court lacked jurisdiction to reconsider its order granting his motion to suppress the evidence after the Commonwealth had simultaneously filed an appeal from that order and a motion to reconsider in the circuit court. He also contends that the trial court erred in refusing to suppress the evidence as the fruit of an unlawful search and seizure based upon deficiencies in the affidavit for a search warrant and search inventory and return. We find no error and affirm West's conviction.

On February 5, 1991, Deputy Timothy Doss (Doss) of the Gloucester County Sheriff's Department applied for a search warrant to search West's home. In support of that warrant, Doss provided information under oath in a standard "Affidavit for Search Warrant" form. The

offenses were described as breaking and entering, grand larceny, and possession of stolen property. Doss identified the place to be searched as the "residence of Frank West, Jr." Attachment number one contained a detailed list of specific items to be searched for, including: 170 cartons of cigarettes identified by name brands; four to five pounds of Gwaltney or Smithfield bacon; and twenty-four one pound packages of Richfood or Eskay bacon.

Paragraph 4 of the affidavit set forth the following facts as constituting "probable cause" for the search of West's home:

On 2-3-91, while speaking with a confidential informant, this affiant was informed of the following: The confidential informant states that while speaking with Frank West, Jr. a little over a week ago, he (Mr. West) was bragging about items that he has taken from stores he broke into. The confidential informant states that Mr. F. West, Jr. states that he has approx. thirty pounds of bacon and a boat load of cigarettes that he had taken from the stores he broke into. The confidential informant states that Mr. F. West, Jr. stated anytime you need bacon or cigarettes just come by my house and get some. The confidential informant also told this affiant that Mr. F. West, Jr. made mention of a cash drawer he had taken. The confidential informant states that all Mr. F. West, Jr. stated about the cash drawer was that he took it from a store he broke into. Due to the aforementioned facts this affiant feels a search should be conducted of Mr. Frank West, Jr.'s residence and any buildings and all vehicles on the curtilage. This affiant feels the search would recover items listed in [attachment number one] of this affidavit.

The Gloucester County Sheriff's Office is currently investigating (2) business break-ins, case numbers 91-0106, 91-0131, that involve items that are listed above as items that were stolen at the time of break-in.

With regard to the reliability and credibility of the confidential informant, Doss stated on the form that:

This affiant feels the confidential informant is reliable due to the following: (1) This confidential informant has given information to this affiant on two separate occasions that resulted in two misdemeanor arrests. On at least one of the two charges a conviction was obtained. (2) The confidential informant is a resident of Gloucester County. (3) The items that [are] stated are items that

have been taken in two recent business break-ins here in Gloucester County.

The search warrant was issued by the magistrate on February 5, 1991, permitting a search of West's residence for the various items outlined in attachment one of the affidavit. On February 6, 1991, the search warrant was executed and, based upon items found during the search, West was arrested and charged with grand larceny of the property of George P. Ashe, owner of Ashe's Store.

On February 8, 1991, Doss filed in the Gloucester Circuit Court Clerk's office verification that the warrant had been executed on "2-6-91 1322 hrs." He returned the executed search warrant along with four attachments listing the specific items seized from the house. A fifth attachment to the document, in the form of a handwritten addendum, was filed on February 11, 1991. That attachment listed two items found in the hall closet of West's house during the search. The attachment, which was signed by the same clerk who signed the original attachments, also contains a signed statement by Doss indicating that "[t]his affiant overlooked these items by mistake when typing the copy of items seized. There was no or is no intention to hide any items seized. To the best of my knowledge this will be all items seized in attachments '1, 2, 3, 4, 5.' "

West filed a motion to suppress the evidence seized during the search of his home, claiming that alleged defects in the supporting affidavit invalidated the search warrant. Following a hearing on July 2, 1991, Judge DeHardit granted West's motion to suppress. On July 9, 1991, the prosecutor filed a notice of appeal in the circuit court relating to the July 2 order granting the motion to suppress. On that same day, the prosecutor also filed a motion to reconsider the July 2 ruling.

On July 12, 1991, Judge DeHardit held a hearing and stated that after reconsideration the court felt it should "withdraw its ruling on the search warrant and then have it set with another judge." Accordingly, the court set a date for a hearing with a different judge on the motion to suppress.

On July 23, 1991, Judge Lam heard the motion to suppress. The transcript of the July 2 hearing was made a part of the record, and the court heard additional evidence and arguments of counsel. Doss admitted that the affidavit for a warrant to search West's home was the

first he had ever prepared. He stated that all of the information in paragraph four, relating to the material facts constituting probable cause, except for the information about the two current criminal investigations, was obtained from one of two informants with whom he spoke. Doss noted that he spoke with the primary informant on the last day of January 1991, rather than February 3, 1991, as represented in the affidavit. Doss added that the February 3 date was actually when he spoke with the second informant. Both informants told Doss that West had made the statements to them "a little over a week ago." Doss stated that the second informant provided information that corroborated certain facts related by the primary informant. Specifically, the second informant stated that West had told him that he had stolen bacon and cigarettes from stores he had "broken into" and told the informant to just stop by West's house if he wanted bacon or cigarettes.

Doss testified that he did not believe it was necessary to mention the second informant in the affidavit because the second informant merely corroborated certain information provided by the primary informant. Doss further testified that the statement in the affidavit regarding the reliability of the informant related only to his primary informant and not the second one. Doss also noted that the two investigations mentioned in paragraph four as "business break-ins" referred to one store that was burglarized in the first week of January and another store burglarized between January 23 and 24.

Doss testified that his original typed inventory of items seized included four attachments. After Doss filed the document, he realized he had inadvertently forgotten to list a gun and holster found in the hall closet in West's house. After asking the prosecutor what to do, Doss filed a handwritten attachment, number five, with the clerk.

The trial court denied West's motion to suppress, finding the affidavit and warrant valid, and no error in the filing of attachment number five. Prior to trial, on September 5, 1991, defense counsel filed a motion to suspend further proceedings, alleging that the court had lacked jurisdiction on July 23, 1991, to hear the motion to dismiss and was without jurisdiction to proceed to trial "until such time as the Court of Appeals has ruled on the Commonwealth's appeal." The trial court overruled the motion.

## I.

West first challenges the circuit court's reconsideration of its order granting his motion to suppress. Citing Code § 19.2-400, West contends that once the Commonwealth's appeal was noted on July 9, 1991, the circuit court lacked jurisdiction to reconsider its order granting his motion to suppress. Code § 19.2-400 provides that "[u]pon the filing of a timely notice of appeal, the order from which the appeal is taken and further trial proceedings in the circuit court . . . shall thereby be suspended pending disposition of the appeal."

We do not construe the language of Code § 19.2-400 to preclude the circuit court from reconsidering an order merely because the Commonwealth has filed a notice of appeal in the circuit court. The language of the statute simply provides that once a timely notice of appeal is filed, the order being appealed may not be enforced and the circuit court may not proceed to trial. By its own terms, this statute specifically "suspends" further proceedings pending the disposition of the appeal. From this language, the legislature clearly intended to prohibit the circuit court from giving effect to the order being appealed and from proceeding with the trial while the Commonwealth is challenging the pretrial order. Thus, the purpose of this statute is to prevent a circuit court from defeating the ability of the Commonwealth to pursue its appeal once the appeal is properly noted.

Here, the circuit court, by reconsidering its suppression order, was not attempting to defeat the Commonwealth's right of appeal. Rather, the circuit court was simply reevaluating its order, upon the Commonwealth's motion. In this way, the circuit court neither gave effect to its order nor proceeded to try West upon the charges. The circuit court simply vacated an order it later deemed incorrect and, in so doing, eliminated the basis for the Commonwealth's appeal.[1]

Our construction of this statute not only gives effect to the plain meaning of the provision and legislative intent, but also promotes judicial economy and efficiency. In this case, the circuit court's reconsideration and vacation of its suppression order eliminated the need for an appeal to this Court, which would have resulted in expense and delay. Thus, the plain language of the statute, legislative intent and the

---

[1] Although the Commonwealth filed a notice of appeal in the circuit court on July 9, 1991, it did not comply with the requirements for perfecting an appeal to this Court. Thus, the prosecutor essentially abandoned the appeal.

interest in judicial economy and efficiency compel us to hold that Code § 19.2-400 does not bar the circuit court from reconsidering its order after the Commonwealth had filed a notice of appeal from that order in the circuit court.

## II.

Having determined that the circuit court had jurisdiction to reconsider its suppression order, we next determine whether the circuit court erred in denying West's motion to suppress on July 23, 1991.

West contends that the circuit court should have granted his motion to suppress because (1) the affidavit failed to allege substantially the offense and the material facts constituting probable cause for issuance of the search warrant; (2) the affidavit failed to identify the existence of a second informant and provided an inaccurate date; and (3) the Commonwealth failed to comply with the requirements in Code § 19.2-57 for filing the search inventory and return.

## A.

■ An affidavit filed in support of a search warrant must "[allege] briefly material facts, constituting the probable cause for the issuance of such warrant and [allege] substantially the offense in relation to which such search is to be made."[2] Code § 19.2-54.

■ The requirement that the affidavit in support of a search warrant substantially allege the offense contemplates that "the offense . . . should be identified briefly and in general terms rather than in the precise and legalistic language usually found in an indictment, a presentment or an arrest warrant." *Carratt v. Commonwealth*, 215 Va. 55, 59, 205 S.E.2d 653, 656 (1974), *cert. denied*, 420 U.S. 973 (1975). The purpose of this requirement "is to apprise the subject of the search of the offense being investigated and the evidence sought, and to advise the officers in advance as to what they are to be searching for." *Id.* at 60, 205 S.E.2d at 656.

Here, the affidavit specifically describes the offenses being investigated as breaking and entering, grand larceny, and possession of stolen property. This language "substantially" alleges, in general terms,

---

[2] Code § 19.2-54 sets forth other requirements for the filing of an affidavit in support of a search warrant, which are not pertinent here. We do not discuss whether the Commonwealth complied with these additional requirements in Code § 19.2-54 because that issue is not before us.

the offenses that are the basis of the search. *Compare Moore v. Commonwealth*, 211 Va. 569, 570, 179 S.E.2d 458, 459-60 (1971) (holding that no offense alleged where affidavit described offense as "felony"). Furthermore, the affidavit describes the items to be searched for to include bacon and cigarettes, which are identified by quantity and name brand.[3] The affidavit states that these items were stolen during "two business break-ins" currently under investigation by the Gloucester County Sheriff's Office. The affidavit represents that "a little over a week ago," West told the informant that he had approximately "30 pounds of bacon and a boat load of cigarettes" that he had taken from stores he "broke into." These facts clearly identify the items subject to the search. Based upon these facts, we find that the affidavit substantially alleges the offenses so as to apprise adequately West of the offenses and the evidence sought, and to inform those conducting the search of the items sought. *See Carratt*, 215 Va. at 59-60, 205 S.E.2d at 656. Thus, the requirement that the affidavit substantially allege the offense in relation to which the search is made was satisfied.

██ Additionally, the affidavit provides sufficient material facts to establish probable cause for issuance of the warrant. In determining whether a search warrant affidavit furnishes probable cause, we follow the "totality-of-the-circumstances approach" adopted by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 231-32 (1983). *See Boyd v. Commonwealth*, 12 Va. App. 179, 186, 402 S.E.2d 914, 919 (1991). "The probable cause inquiry conducted by the magistrate entails 'a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *Id.* at 185, 402 S.E.2d at 918 (quoting *Gates*, 462 U.S. at 238). In reviewing the magistrate's probable cause determination, we must decide " 'whether the evidence viewed as a whole provided a "substantial basis" for the Magistrate's finding of probable cause.' " *Id.* at 185-86, 402 S.E.2d at 918 (quoting *Massachusetts v. Upton*, 466 U.S. 727, 732-33 (1984)). Moreover, "[w]here the basis for concluding that probable cause exists rests upon information provided by an informer, one focus of the inquiry must

---

[3] The affidavit listed these items as "(4 to 5) pounds of Gwaltney or Smithfield bacon," "(24) one pound packages of Richfood or Eskay bacon," and "170 cartons of cigarettes; Marlboro, Marlboro Lights, Marlboro Menthol, Winston and Kools, Va. Slims, Salems, Merits."

be upon whether the magistrate could determine the informer's honesty, veracity, and basis of knowledge." *Id.* at 186, 402 S.E.2d at 918 (citing *Corey v. Commonwealth*, 8 Va. App. 281, 286-87, 381 S.E.2d 19, 22 (1989)).

Viewing the information set forth in the affidavit as a whole, we find that the magistrate had a substantial basis for concluding that probable cause existed. The affidavit sets forth ample evidence establishing the reliability and veracity of the informant: (1) the informant had given Deputy Doss information in the past that had led to two misdemeanor arrests, one of which resulted in a conviction; (2) the informant is a resident of Gloucester County; and (3) the items the informant stated that West admitted to having stolen from stores he burglarized matched items taken in two recent break-ins in Gloucester County, which were under investigation. Moreover, the information reported by the informant is consistent with other information in the affidavit. The informant's knowledge was based on West's admission that he had broken into stores and had stolen items that he was keeping at his home. Thus, the affidavit establishes the informant's basis of knowledge, reliability and veracity. Consequently, the magistrate had a substantial basis for finding probable cause.

### B.

West also alleges that the magistrate based his finding of probable cause upon false and misleading information. Specifically, West contends that because the affidavit failed to identify the existence of a second informant and provided an inaccurate date, the affidavit was fatally defective. There is no dispute that Doss failed to mention the existence of the second informant and provided an inaccurate date in the affidavit. However, the Commonwealth contends that these inaccuracies are not fatal to the validity of the warrant or the supporting affidavit.

Although Doss spoke with two informants about West, he only mentioned one, the primary informant, in the affidavit for the search warrant. Doss testified that all of the information in paragraph four of the affidavit, relating to the material facts constituting probable cause, was obtained from the primary informant, except for the information about the two criminal investigations. He testified that the second informant provided information that corroborated certain facts alleged by the primary informant: that West had stolen bacon and cigarettes that were in his possession and was told to stop by West's house if he

wanted cigarettes or bacon. Because the information related by the second informant merely corroborated the information provided by the primary informant, Doss did not believe it was necessary to mention the second informant. Doss also testified that he spoke with the primary informant on the last day of January 1991, rather than February 3, 1991, as represented in the affidavit. Doss explained that he spoke with the second informant on February 3. The information concerning the reliability of the informant referred only to the primary informant.

In *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978), the Supreme Court of the United States stated that

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*See also Neustadter v. Commonwealth*, 12 Va. App. 273, 274, 403 S.E.2d 391, 392, *aff'd en banc*, 13 Va. App. 283, 411 S.E.2d 228 (1991). The hearing on the motion to suppress in this case essentially included a *Franks* hearing, without any preliminary showing by West. The trial court found that the deficiencies in the affidavit were not "intentional falsehood[s]" or "intentional mistake[s]," and denied the motion to suppress. "[These] findings are not reversible unless plainly wrong or not supported by the evidence." *Moats v. Commonwealth*, 12 Va. App. 349, 355, 404 S.E.2d 244, 247 (1991).

Doss believed that mentioning the existence of the second informant was unnecessary because that informant's information was merely corroborative. Indeed, we have recognized that "[t]he Commonwealth is not required to include all of its information in an affidavit [for a search warrant.]" *Id.* at 356, 404 S.E.2d at 247. Doss also explained that the error concerning the date of his conversation with the primary informant resulted from confusion about the date he

spoke with the second informant. Doss testified that the affidavit for a warrant to search West's house was the first he had ever prepared. This evidence, which is uncontradicted, shows that the deficiencies in the affidavit were inadvertent and resulted from the officer's lack of experience, rather than any knowing and intentional or reckless attempt to include false information. Because the trial court's finding that the mistakes were not deliberate or reckless falsehoods is supported by the evidence and is not plainly wrong, we will not disturb it on appeal. *See id.* at 355, 404 S.E.2d at 247.

Moreover, we find that the omission of mention of the second informant and the inclusion of the inaccurate date of the conversation with the primary informant were not facts "necessary to the finding of probable cause." *Franks*, 438 U.S. at 156. Because the information provided by the second informant was merely corroborative, it was not necessary to the probable cause determination. The omitted information was already before the magistrate. Likewise, the date that Doss spoke with the primary informant was not "necessary" to the probable cause determination. Doss testified that he spoke to the primary informant on the last day in January 1991, and to the second informant on February 3, 1991. Both informants told Doss that they had spoken to West "a little over a week ago." Thus, Doss' conversation with the primary informant was actually three days earlier than reported in the affidavit. This three day difference, when viewed with other information in the affidavit, was not necessary to the magistrate's finding of probable cause. Thus, these mistakes did not affect the probable cause determination.

Even if the false information is disregarded, the affidavit, when read in its entirety, provided the magistrate with a substantial basis for his finding of probable cause. The information not provided to the magistrate concerned the existence of a second informant, which would merely have bolstered a finding of probable cause. Thus, viewing the affidavit with the "false material set to one side," we conclude that the "remaining content" is sufficient to establish probable cause. *Id.*

## C.

West also contends that the Commonwealth failed to comply with the statutory requirements for filing the search inventory and return pursuant to Code § 19.2-57. West alleges that Code § 19.2-57 contemplates that all property seized in the execution of the search warrant

must be listed in the inventory that is filed with the return. Thus, according to West, the inventory Doss filed in the clerk's office on February 8, 1991, was incomplete, and the addendum to the inventory filed in the clerk's office on February 11, 1991, failed to satisfy the requirements of the statute.

Code § 19.2-57 provides, in pertinent part:

The officer who seizes any property shall prepare an inventory thereof, under oath. An inventory of any seized property shall be produced before the court designated in the warrant. The officer executing the warrant shall endorse the date of execution thereon and shall file the warrant, with the inventory attached . . . and the accompanying affidavit, . . . within three days after the execution of such search warrant in the circuit court clerk's office, wherein the search was made. . . . Saturdays, Sundays, or any federal or state legal holiday shall not be used in computing the three-day filing period.

Although Doss had to supplement the original inventory, the inventory and return were filed on February 8, within three days after execution of the search warrant, as required by the terms of Code § 19.2-57. The statute requires that a complete inventory of all the items seized be timely filed with the warrant. Both the original inventory and addendum were filed with the return within three business days of the execution of the warrant and, therefore, were filed within the statutory period.[4]

We find no basis for West's construction of this provision to require the listing of all property seized in the inventory that is filed with the return. The plain language of this statute requires that the return, inventory and affidavit be filed within three days of execution of the search warrant. The statute, however, does not prohibit the filing of an addendum to the inventory within this three day window. Although the statute requires that the return be filed "with the inventory attached," we do not construe this language to proscribe the filing of an addendum to the inventory within the statutory time frame

---

[4] The record reflects that the warrant was executed on February 6, 1991, which was a Wednesday. The search inventory and return were filed two days later, on Friday, February 8, 1991. The addendum was filed on Monday, February 11, 1991. Because Saturdays and Sundays are not calculated in the three day period under the statute, February 11, 1991 was the last day for filing these materials under Code § 19.2-57.

when the requirements for the filing of the original inventory have been satisfied.

Moreover, the fact that the addendum to the inventory was not technically made "under oath" does not require suppression of the evidence seized pursuant to the search. The inventory was submitted under oath, as required by Code § 19.2-57, and Doss signed the addendum affirming that, to the best of his knowledge, attachments one through five listed all of the items seized from West's home. The original inventory and addendum were signed by the same individual at the clerk's office. Because the original inventory was submitted "under oath," we find no violation of the statute where the addendum included an affirmation that the inventory listed all items found during the search of West's home and the addendum was signed by the officer and the clerk. These actions constitute substantial compliance with the statute.

Even if the filing of the inventory and return was not in compliance with Code § 19.2-57, West is not entitled to suppression of the evidence seized from his home. "While violations of state procedural statutes are viewed with disfavor, . . . neither the Virginia Supreme Court nor the legislature has adopted an exclusionary rule for such violations. . . . where no deprivation of the defendant's constitutional rights occurred." *Thompson v. Commonwealth*, 10 Va. App. 117, 122, 390 S.E.2d 198, 201 (1990) (citations omitted); *see also Penn v. Commonwealth*, 13 Va. App. 399, 407, 412 S.E.2d 189, 194 (1991), *aff'd*, 244 Va. 218, 420 S.E.2d 713 (1992); *Troncoso v. Commonwealth*, 12 Va. App. 942, 944, 407 S.E.2d 349, 350 (1991). " '[H]istorically, searches or seizures made contrary to provisions contained in Virginia statutes provide no right of suppression unless the statute supplies that right.' " *Troncoso*, 12 Va. App. at 944, 407 S.E.2d at 350 (quoting *Commonwealth v. Brown*, 8 Va. App. 41, 44, 378 S.E.2d 623, 624 (1989) (Baker, J., concurring)).

Code § 19.2-57 is a procedural statute "found in the chapter of the code dealing with the issuance and execution of search warrants." *Id.* (holding that because Code § 19.2-60, a procedural statute, did not expressly provide a right of suppression of evidence, a violation of that provision did not require application of the exclusionary rule in the absence of a constitutional violation). Code § 19.2-57 does not expressly command the suppression or exclusion of evidence for a violation of the statute. Moreover, West does not allege that his constitutional rights were violated. Consequently, even if the Commonwealth

failed to comply with the requirements of Code § 19.2-57, suppression of the evidence is not required.[5]

## III.

For these reasons, we hold that (1) the trial court had jurisdiction to reconsider its suppression order, and (2) the trial court did not err in refusing to suppress the evidence seized pursuant to the search of West's home.

*Affirmed.*

Willis, J., concurred.

Baker, J., concurred in the result.

---

[5] Even if a Fourth Amendment violation has occurred in this case, the good faith exception to the exclusionary rule applies. "The purpose of the exclusionary rule historically was to deter police misconduct rather than to punish the errors of magistrates." *Derr v. Commonwealth*, 242 Va. 413, 422, 410 S.E.2d 662, 667 (1991). Accordingly, "where an officer, acting in objective good faith, obtains a search warrant from a magistrate and acts within the scope of the warrant," the deterrent is "absent" and the exclusionary rule does not apply. *Id.* However, the good faith exception to the exclusionary rule does not apply where: (1) the magistrate is misled by a knowing or reckless falsehood in the affidavit; (2) the magistrate has " 'wholly abandoned his judicial role' "; (3) the warrant is " 'so lacking in indicia of probable cause' " that official belief in its existence was objectively unreasonable; and (4) there is a facial deficiency in the warrant so extreme that the executing officers could not reasonably presume it to be valid. *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)). None of these four situations exists here. There was no evidence of an intentional or reckless falsehood in the affidavit, the magistrate considered the warrant consistent with his judicial role, the officers were provided with a facially valid warrant, and the warrant was not so deficient or lacking in probable cause as to render it unreasonable.