COURT OF APPEALS OF VIRGINIA


Present: Judges Kelsey, Haley and Petty
Argued by teleconference


COMMONWEALTH OF VIRGINIA

v.        Record No. 0213-08-3

BERTON MARK DEBUSK, III, A/K/A
  BURTON MARK DEBUSK, III

MEMORANDUM OPINION[*] BY
JUDGE WILLIAM G. PETTY
JUNE 3, 2008


FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
Larry B. Kirksey, Judge

Benjamin H. Katz, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellant.

R. Wayne Austin (Scyphers and Austin, P.C., on brief), for appellee.


The Commonwealth appeals the trial court's order granting Berton Mark DeBusk's

motion to suppress evidence and dismissing *sua sponte* the charges against him.  For the reasons

stated below, we agree with the Commonwealth regarding the motion to suppress the evidence

and determine that we need not address the Commonwealth's argument regarding the dismissal

of the charges.  We reverse the trial court and remand for further proceedings consistent with this

opinion.

I. BACKGROUND

On appeal, we view the evidence in the light most favorable to the party prevailing below,

and grant to it all reasonable inferences fairly deducible from the evidence.  Ragland v.

Commonwealth, 16 Va. App. 913, 915, 434 S.E.2d 675, 676-77 (1993).  That evidence establishes

that Janice Carpenter, DeBusk's estranged girlfriend, went to the Washington County Sheriff's

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

office and reported having observed firearms in DeBusk's home. Carpenter knew that DeBusk was a convicted felon. At Detective Hazelwood's request Carpenter agreed to wear an electronic recorder-transmitter during her next visit with DeBusk in order to gather evidence of DeBusk's possession of firearms.

A short time later, DeBusk invited Carpenter to come to his home to discuss their relationship. That evening, Carpenter went to DeBusk's home while wearing the recorder-transmitter. While there, they discussed firearms that DeBusk wanted to sell and DeBusk confirmed to Carpenter that he had several other firearms in his residence. Carpenter also observed several handguns in the house while she was there. Investigator Hazelwood monitored and recorded this conversation.

Based on this information, the police obtained a search warrant for DeBusk's home and found a number of firearms. A grand jury indicted appellee DeBusk on three counts of possession of a firearm as a convicted felon, in violation of Code § 18.2-308.2. Following his indictment, DeBusk filed a motion to suppress evidence. After a hearing, the trial court held that:

> Mr. Debusk had a constitutionally recognized protected expectation of privacy which would include the unwelcome monitoring of his private conversation that was taking place at that time. He had certainly every legitimate reasonable expectation that anything that was said then would be private.

Based on that ruling, the trial court granted the motion to suppress. Inexplicably, and without inquiring whether the Commonwealth wished to proceed to trial in light of the ruling, the trial court dismissed the indictments. The Commonwealth filed this appeal pursuant to Code § 19.2-398(A)(2), arguing that the trial court erred in suppressing the evidence and dismissing the charges below.

## II. Motion to Suppress

Under settled principles, we address the legal issues arising from a suppression motion "only after the relevant historical facts have been established." Raab v. Commonwealth, 50 Va. App. 577, 579, 652 S.E.2d 144, 146 (2007) (*en banc*) (quoting Logan v. Commonwealth, 47 Va. App. 168, 171, 622 S.E.2d 771, 772 (2005) (*en banc*)). On appeal, the facts developed in the trial court must be reviewed "in the light most favorable to the [appellee], giving [him] the benefit of any reasonable inferences." Glenn v. Commonwealth, 49 Va. App. 413, 416, 642 S.E.2d 282, 283 (2007) (*en banc*) (citation omitted), aff'd, 275 Va. 123, 654 S.E.2d 910 (2008). Whether evidence was obtained in violation of the Fourth Amendment presents a mixed question of law and fact that we review *de novo* on appeal. See Ornelas v. United States, 517 U.S. 690, 691 (1996).

This case turns on whether DeBusk had a "constitutionally protected reasonable expectation of privacy" in the incriminating conversation he had with Carpenter that triggered Fourth Amendment protections. Williams v. Commonwealth, 259 Va. 377, 385, 527 S.E.2d 131, 135 (2000) (citing Oliver v. United States, 466 U.S. 170, 177 (1984)).

On appeal, the Commonwealth relies on United States v. White, 401 U.S. 745, 749 (1971) (plurality opinion), for the proposition that a criminal defendant has no "justifiable and constitutionally protected expectation that a person with whom he is conversing will not then or later reveal the conversation to the police." DeBusk, on the other hand, argues that he had a reasonable expectation of privacy for two reasons. First, he argues that Carpenter's entry into his home as an agent of the police violated his Fourth Amendment rights because she was only invited there to discuss their relationship. Second, DeBusk argues that the recording of their conversation violated his Fourth Amendment rights as well. We are persuaded by the Commonwealth's argument.

A.  Entry Into the Residence

Initially, we hold that Carpenter's deception of DeBusk does not vitiate his consent to her presence in his home.  DeBusk argues "Carpenter was permitted into his home for [his] expressed purpose of discussing their relationship; presumably with the intent to work toward reconciliation.  He did not solicit her to engage in any illegal activity nor did he know she was in his home acting as a surveillance device for law enforcement agents."  Thus, he concludes, he had a privacy interest in any conversation he had with Carpenter.  As explained below, this argument runs contrary to well-settled law.

The Fourth Amendment "protects people from unreasonable government intrusions [of] their legitimate expectations of privacy."  United States v. Chadwick, 433 U.S. 1, 7 (1977).  However, "[w]hat a person knowingly exposes to the public, even in his own home . . ., is not a subject of Fourth Amendment protection."  Katz v. United States, 389 U.S. 347, 351 (1967).

In Hoffa v. United States, 385 U.S. 293, 300 (1966), the Supreme Court rejected a similar argument.  There, Hoffa argued that the informant's "failure to disclose his role as a government informer vitiated the consent that [Hoffa] gave to [the informer's] repeated entries into the [hotel suite where Hoffa was staying], and that by listening to [Hoffa's] statements [the informer] conducted an illegal 'search' for verbal evidence."  Id.  The Court concluded that Hoffa had not relied on "the security . . . [of] a constitutionally protected area, be it his home or office, his hotel room or his automobile."  Id. at 301.  Instead, he relied on "his misplaced confidence" that an individual that he had invited into his hotel suite "would not reveal" conversations that were held in his presence – conversations that revealed Hoffa's "wrongdoing."  Id. at 302.

The Court held that "the Fourth Amendment [does not protect] a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it."  Id.  See also White, 401 U.S. at 749 ("[H]owever strongly a defendant may trust an apparent colleague,

his expectations in this respect are not protected by the Fourth Amendment when it turns out that the colleague is a government agent regularly communicating with the authorities.").

The situation before us is very like that in Hoffa. Here, DeBusk invited his estranged girlfriend, Carpenter, to his home, and, in the course of their conversation, admitted owning firearms. Carpenter was not required by the Fourth Amendment to—as DeBusk suggests—inform DeBusk that she was acting as a police informant prior to entering his home. Thus, in these circumstances, DeBusk had "no interest legitimately protected by the Fourth Amendment" in the conversations he had with Carpenter or the observations she made while in his home with his consent. Hoffa, 385 U.S. at 302.[1]

### B. Recording of Conversations

Having concluded that Carpenter's invited entry into DeBusk's home did not violate the Fourth Amendment, we also conclude that the recording of their conversation with Carpenter's consent was also constitutionally permissible.

The parties do not dispute that Carpenter consented to wear the recorder-transmitter and be monitored by the police when she went to DeBusk's home. When an individual working with

---

[1] Cf. Wayne R. LaFave, 4 Search & Seizure, § 8.2(m) (collecting cases):

> [C]ourts . . . have . . . upheld subterfuge entries which did *not* include an asserted desire to participate in criminal conduct[. Instead, courts have relied] on the broader proposition that the Fourth Amendment affords no protection to the person who voluntarily reveals incriminating evidence to one who is a government agent in the mistaken belief that the latter will not disclose it. Thus, for example, courts have approved such ruses as: undercover police entry of a real estate agent's home in the guise of a prospective home purchaser; undercover police entry of a suspected counterfeiter's house in the guise of a "helper" to a service representative of the company to which the suspect was trying to sell part of his press; and undercover entry of a gambler's hospital room in the guise of a hospital porter responsible for cleaning the room.

the police agrees to wear a recording device, as Carpenter did in this case, there is no Fourth Amendment violation. See United States v. Karo, 468 U.S. 705, 716 n.4 (1984) (distinguishing situations involving "'[revelations] to the Government by a party to conversations with the defendant' and eavesdropping on conversations without the knowledge or consent of either party to it[,]'" and concluding that "[a] homeowner takes the risk that his guest will cooperate with the Government but not the risk that a trustworthy friend has been bugged by the Government without his knowledge or consent" (citations omitted)). As the Supreme Court explained in White, "[n]o warrant to 'search and seize' is required . . . when the Government sends to defendant's home a secret agent who . . . unbeknown to the defendant, carries electronic equipment to record the defendant's words and the evidence so gathered is later offered in evidence." White, 401 U.S. at 749 (citing Lopez v. United States, 373 U.S. 427, 438 (1963)). Thus, we conclude that DeBusk had no reasonable expectation that Carpenter would refuse to allow the monitoring and recording of their conversation.[2]

### III. DISMISSAL OF CHARGES

The Commonwealth argues that the trial court's *sua sponte* dismissal of the indictments after granting the motion to suppress was error. DeBusk, on the other hand, argues that we do not have jurisdiction to determine whether the dismissal was in error based on the narrow grounds for appeal granted to the Commonwealth by Code § 19.2-398.[3]

---

[2] This conclusion is also consistent with analogous decisions involving Chapter 6 of Title 19.2 of the Code of Virginia, relating to "Interception of Wire or Oral Communications." See, e.g., Wilkes v. Commonwealth, 217 Va. 885, 889-90, 234 S.E.2d 250, 252-53 (1977) (concluding that the term "oral communication" as defined in Code § 19.2-61(2) does not include a wrongdoer's recorded statements to a government informer because there is no "justifiable expectation of noninterception" on those facts).

[3] DeBusk conceded at oral argument that there was no legal basis to support the trial court's dismissal of the indictments based upon its ruling that evidence was obtained in violation of the Fourth Amendment. Nevertheless, he argues that Code § 19.2-398(A)(1) does not authorize the Commonwealth to appeal such an order of dismissal.

Assuming, without deciding, that DeBusk is correct regarding our lack of jurisdiction to review the trial court's dismissal of the indictments, we conclude that we need not address the dismissal portion of the order in this appeal. We come to this conclusion based on the relationship between Rule 1:1 and Code § 19.2-400.

In pertinent part, Rule 1:1 states:

> All final . . . orders . . . shall remain under the control of the trial court and subject to be modified, vacated, *or suspended* for twenty-one days after the date of entry, and no longer.

(Emphasis added.)

Code § 19.2-400 states:

> Upon the filing of a timely notice of appeal [by the Commonwealth], the order from which the pretrial appeal is taken and further trial proceedings in the circuit court, except for a bail hearing, shall thereby be *suspended* pending disposition of the appeal.

(Emphasis added.)

Code § 19.2-400, when read along with Rule 1:1, operates to suspend both the efficacy and the finality of a trial court's order during the pendency of a Commonwealth's appeal. The effect of this provision is to toll the finality of the order as surely as if the trial court had entered an order vacating or suspending its order. We recognized this relationship between Code § 19.2-400 and Rule 1:1 in Commonwealth v. West, 16 Va. App. 679, 685, 432 S.E.2d 730, 734 (1993): "By its own terms, [Code § 19.2-400] specifically 'suspends' further proceedings pending the disposition of the appeal. . . . [T]he purpose of this statute is to prevent a circuit court from defeating the ability of the Commonwealth to pursue its appeal once the appeal is properly noted."[4]

---

[4] We note that another panel of this Court held that a trial court "lacks authority to dismiss" on similar facts. See Commonwealth v. Lane, No. 0318-99-2 (Va. Ct. App. Aug. 3, 1999).

At the conclusion of the suppression hearing, the trial court announced its decision to suppress the evidence and stated: "The indictments in these cases are hereby dismissed." Thereafter the court entered an order granting the motion and dismissing the indictments, but noting the Commonwealth's intention to appeal. Two days after entry of the order the Commonwealth filed a timely notice of appeal. Upon the Commonwealth's filing of its notice of appeal, the entire order—including the portion dismissing the indictments—was suspended by operation of Code § 19.2-400. Because the dismissal order was suspended by operation of the statute within the 21 days, the matter remained within the jurisdiction of the trial court. The order did not become final and it is subject to being vacated or modified by the trial court based upon our conclusion regarding the motion to suppress. Accordingly, the indictments remain viable charging documents and we need not address the Commonwealth's appeal on this issue.

## IV. CONCLUSION

For the foregoing reasons, we reverse the trial court's granting of defendant's suppression motion and remand to the trial court for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>