## Luis Manuel Verez

### v.

## Commonwealth of Virginia

Record No. 84111

## Milton Vidal

### v.

## Commonwealth of Virginia

Record No. 841114

November 27, 1985

Present: All the Justices

*Robert S. Ganey (Ivy P. Blue*, on briefs), for appellant. (Record Nos. 841111 and 841114.)

*M. Katharine Spong, Assistant Attorney General (William G. Broaddus, Attorney General*, on brief), for appellee. (Record Nos. 841111 and 841114.)

RUSSELL, J., delivered the opinion of the Court.

In these cases the police entered a motel room without a search warrant or an arrest warrant, seized cocaine in plain view, and arrested the occupants. The defendants' consolidated appeals, based on the same set of facts, challenge the legality of these actions by the police.

Officers of the Virginia State Police and the federal Drug Enforcement Administration (D.E.A.) had concluded that Luis Manuel Verez was engaged in the transportation of cocaine in kilogram lots from Florida to Northern Virginia. Verez had sold cocaine periodically over a five-year period to Raymond Cunningham and Russell Chase, who lived in Fairfax County. Unknown to Verez, Cunningham and Chase had become police informants, actively cooperating with the D.E.A. by the fall of 1983.

Although no actual transactions had taken place between Verez and the other men since 1980, Verez still occasionally called Cunningham to inquire whether he was interested in a purchase. Having informed the D.E.A. of such a call in September 1983, Cunningham and Chase were instructed by D.E.A. officers to arrange a purchase of cocaine from Verez. They did so, and Verez agreed to drive to Northern Virginia to deliver the cocaine to them on September 29 or 30, 1983.

Verez did not appear on the appointed days, but called Cunningham at about 7:00 p.m. on October 2nd to say that he had been delayed, but that he was now in Virginia. At 9:00 p.m. that night, Verez called again and told Cunningham that his car had broken down at Ashland, that he was staying at the King's Motor Inn there, and that Cunningham and Chase might drive to Ashland that night to consummate the drug transaction. The police monitored the 9:00 p.m. telephone conversation.

Verez had "hired" Milton Vidal to drive him to Virginia, and the two men were staying in a room registered in Vidal's name at the motel. In the 9:00 p.m. telephone conversation, Verez gave Cunningham a description of his car and the name of Vidal who was then unknown to Cunningham, Chase, or the police working on the case. Verez did not give Cunningham his room number at the motel.

D.E.A. agents and Virginia police officers accompanied Cunningham and Chase to Ashland and met with local police officers and the Commonwealth's Attorney of Hanover County behind a shopping center near the motel late that night. In a discussion of tactics, the officers considered statements by Cunningham and Chase that Verez had a history of armed violence in prior drug transactions, that he had at least one companion, and that a frequent *modus operandi* in such transactions, sometimes used by Verez, was for buyer and seller to meet at a location where no drugs were present, insure that they were not watched or followed,

and then move to another location to pick up the drugs. Consequently, the officers were uncertain whether the cocaine would be in the motel room, in Verez' car, or hidden at some other location.

The officers decided to send Cunningham and Chase into the motel room while they maintained surveillance from a distance. If the cocaine were to be produced in the room, Chase would leave on the pretext of returning to his car to pick up some "Clorox" with which to test the cocaine. He would signal the watching officers that the cocaine was actually in the motel room by removing his hat. When Chase returned to the room, the officers would "rush the door" when it was opened to readmit Chase. In the absence of a hat signal, they would try to follow Verez, Vidal, Chase, and Cunningham to wherever they might go to get the cocaine. In order to try to obtain some advance indication of the turn the transaction might take, the officers concealed a microphone in Chase's clothing but it transmitted poorly and produced little that was intelligible to the listening police.

Cunningham and Chase drove to the motel, inquired at the office concerning the room registered to Vidal, were told that it was room 205, called to be sure that Verez was present, and then drove to room 205. Verez met them outside the room and looked about carefully, evidently to determine if they had been followed. The three entered the room, where Cunningham and Chase met Vidal. After pleasantries were exchanged, Vidal removed plastic bags containing approximately one kilogram of cocaine from a closet and placed them on a bed.

Chase said that he had to return to his car to pick up some "Clorox" to test the cocaine. He left the room, went to his car, and removed his hat. Vidal, who had been watching Chase from the window, evidently saw nothing amiss in this performance, and opened the door to readmit Chase. Before he could close it, a number of police officers armed with drawn handguns and shotguns followed Chase into the room. Vidal was temporarily pinned behind the opened door and a shot was accidentally fired into the floor. The occupants of the room made no resistance. The cocaine was lying on the bed in plain view. The officers arrested all four occupants of the room, but, of course, brought no subsequent charges against Cunningham and Chase. While in the motel room, Verez and Vidal signed a form consenting to a search of the room and their car. The search which followed produced nothing

of further interest except a handgun holster and some bullets in the car.

Arrest warrants were issued for Verez and Vidal after they had been taken to the Hanover County jail. The defendants, indicted for possession of a schedule II substance with intent to distribute, filed joint motions to suppress the evidence, challenging the "illegal and warrantless entry into [their] motel room and [their] ultimate warrantless arrest[s]." They further alleged that they had been subjected to an unlawful search and seizure. The court overruled the motions and the defendants were separately tried, Vidal by a jury and Verez by the court. Both were convicted. The jury fixed Vidal's punishment at 40 years' confinement and a $25,000 fine, but the court suspended 15 years' confinement and $20,000 of the fine. At the end of Verez' bench trial, the court, after considering a presentence report, imposed a sentence of 40 years' confinement and a $25,000 fine. Although the defendants assigned several errors, we granted their appeals limited to the questions raised by their motions to suppress.

In a reversal of the positions frequently taken by parties in Fourth Amendment cases, the defendants here argue that the police had sufficient probable cause to obtain either search warrants or warrants of arrest* and should have obtained them before entering the motel room; the Commonwealth contends that it lacked such probable cause. The Attorney General argues that until the police found out which motel room the defendants occupied and ascertained by Chase's hat signal that the cocaine was actually present in the room, the police would have been "unable to describe with any particularity the place to be searched." *See Manley* v. *Commonwealth*, 211 Va. 146, 176 S.E.2d 309 (1970), *cert. denied*, 403 U.S. 936 (1971) (a search warrant directed against a multiple occupancy structure must describe the sub-unit with sufficient particularity to preclude the search of other units).

■ It is unnecessary to decide whether probable cause existed before Chase gave his hat signal. It is beyond question that it existed from the time the signals were given, and that the police were then justified by the exigent circumstances of the situation in entering the motel room, seizing the contraband found there in

---

* The parties here make no distinction between the appropriateness of search warrants or arrest warrants in the circumstances of this case, but appear to agree that the same arguments apply to each. Accordingly, we shall not concern ourselves with any such distinction.

plain view, and arresting the defendants for the felonies obviously then being committed. Even if we assume that the police had probable cause, before the signal was given, to obtain either a search warrant or warrants of arrest, in our view they were not required to do so. *See Patty* v. *Commonwealth*, 218 Va. 150, 155-56, 235 S.E.2d 437, 440-441 (1977), *cert. denied*, 434 U.S. 1010 (1978).

■ The Fourth Amendment protects the people against unreasonable searches and seizures, but not those which are reasonable in the circumstances. In *Payton* v. *New York*, 445 U.S. 573 (1980), the Supreme Court said: "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. *Absent exigent circumstances*, that threshold may not reasonably be crossed without a warrant." *Id.* at 590 (emphasis added). The Court had earlier equated the rights of a guest in a motel room with those of the rightful occupant of a house, for Fourth Amendment purposes. *Stoner* v. *California*, 376 U.S. 483, 490 (1964).

■ Exigent circumstances, however, may justify as reasonable a warrantless entry into a dwelling, a search of the interior, a seizure of contraband, and an arrest of those found in possession of it. Such warrantless entries into dwellings, followed by searches, seizures, and arrests therein, however, are presumed to be unreasonable, in Fourth Amendment terms, casting upon the police a heavy burden of proving justification by exigent circumstances. *Welsh* v. *Wisconsin*, 466 U.S. 740 (1984); *Michigan* v. *Tyler,* 436 U.S. 499 (1978); *United States* v. *Santana*, 427 U.S. 38 (1976); *United States* v. *United States District Court*, 407 U.S. 297, 313 (1972); *Coolidge* v. *New Hampshire*, 403 U.S. 443 (1971); *McDonald* v. *United States*, 335 U.S. 451, 459-60 (1948) (Jackson, J., concurring).

■ No court has, to our knowledge, attempted to formulate a final and comprehensive list of all exigent circumstances which might justify a warrantless entry, but some of those considered relevant have been: (1) the degree of urgency involved and the time required to get a warrant; (2) the officers' reasonable belief that contraband is about to be removed or destroyed; (3) the possibility of danger to others, including police officers left to guard the site; (4) information that the possessors of the contraband are aware that the police may be on their trail; (5) whether the offense is serious, or involves violence; (6) whether officers reasona-

bly believe the suspects are armed; (7) whether there is, at the time of entry, a clear showing of probable cause; (8) whether the officers have strong reason to believe the suspects are actually present in the premises; (9) the likelihood of escape if the suspects are not swiftly apprehended; and (10) the suspects' recent entry into the premises after hot pursuit. *See, e.g., Welsh v. Wisconsin,* 466 U.S. at 750; *U.S. v. Turner,* 650 F.2d 526, 528 (4th Cir. 1981); *Vance v. State of North Carolina,* 432 F.2d 984, 990 (4th Cir. 1970).

■ We have held that in determining whether exigent circumstances were sufficient to overcome the presumption of unreasonableness and justify a warrantless entry, the court must examine the circumstances as they reasonably appeared to the law enforcement officers on the scene. "The officers are not required to possess either the gift of prophecy or the infallible wisdom that comes only with hindsight. They must be judged by their reaction to circumstances as they reasonably appeared to trained law enforcement officers to exist when the decision to enter was made." *Keeter & Bray v. Commonwealth,* 222 Va. 134, 141, 278 S.E.2d 841, 846, *cert. denied,* 454 U.S. 1053 (1981).

■ Applying the foregoing principles, we find ample support in the record for the trial court's ruling that the Commonwealth had carried its burden of proving exigent circumstances sufficient to justify the warrantless entry. The officers waiting outside the motel room were confronted with a volatile, unpredictable situation. They knew that Verez had been armed and violent during similar transactions in the past, and they knew that he had at least one companion in the room with him, also potentially armed. They knew that he was extremely watchful and vigilant against police surveillance. The microphone concealed in Chase's clothing was ineffective, and they could not determine, until they received his prearranged signal, whether the cocaine was in the room or concealed elsewhere. Vidal was keeping continuous watch through the window. If he had become suspicious of Chase, there would be a high probability of violence toward Cunningham, Chase, the nearby police and, possibly, other guests in the motel. An armed attempt to escape was likely, as well as a high probability that the evidence, if present in the room, would be quickly destroyed. If the evidence were concealed outside the room, an entry might be fruitless, leading to violence but allowing the contraband to remain undiscovered in the neighborhood. On the other hand, after

Chase gave his signal, prompt action was imperative. Probable cause was then beyond question, and unless Chase reentered the room with funds to consummate the drug transaction immediately, the dangerous consequences the police contemplated would become imminent.

In *Lowe* v. *Commonwealth*, 218 Va. 670, 239 S.E.2d 112 (1977), *cert. denied*, 435 U.S. 930 (1978), we held that knowledge, by police, of the presence of one and possibly two armed and violent criminals in a house justified a warrantless entry in order to assure their swift apprehension in the interests of the safety of the community and the police themselves. *See also Wright* v. *Commonwealth*, 222 Va. 188, 278 S.E.2d 849 (1981); *Keeter & Bray* v. *Commonwealth*, 222 Va. 134, 278 S.E.2d 841 (1981); *Carratt* v. *Commonwealth*, 215 Va. 55, 205 S.E.2d 653 (1974).

On a set of facts similar to those before us here, a federal court held that the exigent-circumstances exception justified a warrantless entry by police into a motel room after receiving information that drug dealers, at least one of whom was thought to be armed and dangerous, had possession of a large quantity of cocaine in the room. The court observed:

It was impossible to know how many minutes could be allowed to pass without arousing the waiting principals. . . . Once armed suspects in a drug transaction have been alerted to possible detection, the risk that delay in effecting an arrest will result in the destruction of the contraband and increase the danger of injury to the agents or others cannot be dismissed as merely speculative.

*United States* v. *Manfredi*, 722 F.2d 519, 523 (9th Cir. 1983). We agree with that reasoning and conclude that the trial court correctly denied the defendants' motions to suppress. We will affirm the convictions.

*Affirmed.*