BENTON, J.,
dissenting.
I.
The evidence proved that Benjamin McCracken and Teresa Fields lived together in the house for nearly three years. Fields testified that on April 8, 2000, McCracken was asleep when she began cleaning the house. After the cleaning noise awakened McCracken, Fields and McCracken argued. Fields testified that she “had an excruciating headache, ... was ill, *263 irritable.” When she became tired of arguing, she called the police dispatcher, who sent two officers to the residence at midday in response to Fields’ telephone call. One of the officers testified that they responded to a complaint of “verbal arguing.” No evidence indicates Fields told the dispatcher or the officers she wanted the officers to remove McCracken from the house.
When the police arrived, McCracken was putting various personal possessions in his car. Fields and McCracken explained that “they’d had [a] verbal argument and that [there] had been no assault.” When asked if he was able to calm the situation, the officer responded, “It seemed to have been not very escalated.” The officers remained while McCracken gathered some of his personal possessions and put them in his car. One officer described the situation as “very peaceful” and said they helped McCracken load some of his possessions. The other officer testified that McCracken was “very friendly, [that McCracken] agreed to leave, and [that] there were no problems whatsoever.” Fields testified that she and McCracken declined “to fill out any type of papers to keep each other away” and said “there was no purpose for that.”
McCracken went to his mother’s residence with some of his personal possessions and later telephoned Fields. During that conversation, McCracken and Fields were both agitated. McCracken’s mother later telephoned Fields to inform her that McCracken was returning to collect more of his personal possessions. Before McCracken arrived at the residence, Fields telephoned the police dispatcher and requested that the officers return to her home. Fields testified that she “overreacted” and telephoned for the officers to return because she had to go to work. She expected to be late arriving at work and did not want to be further delayed by an argument with McCracken. She testified that when McCracken arrived he told her “he was there to pick up some of his belongings.”
The officers returned to the residence about an hour and a half after they had left the residence. The first officer to arrive testified that before entering the residence, he heard *264 neighbors hollering something to him. Fields’ sister testified that, when she saw the officer having difficulty opening the screen door, she called to him that “the front door drags.” The officer testified that he heard Fields and McCracken “verbally arguing back and forth when he walked up on the porch.” Fields testified, however, that she was talking to McCracken and that they were not arguing. The officer drew his weapon and walked into the house without knocking.
II.
McCracken contends the officers had neither probable cause to believe a crime was being committed nor exigent circumstances to justify their entry. The Commonwealth responds the “officers had probable cause at the time of their warrant-less entry to believe that cognizable exigent circumstances were present” because of a “domestic” dispute.
The United States Supreme Court has held that, “absent probable cause and exigent circumstances, warrantless [entries and] arrests in the home are prohibited by the Fourth Amendment.” Welsh v. Wisconsin, 466 U.S. 740, 741, 104 S.Ct. 2091, 2093, 80 L.Ed.2d 732 (1984); Payton v. New York, 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639 (1980). “[W]arrantless entries into dwellings, followed by searches, seizures, and arrests therein ... are presumed to be unreasonable, in Fourth Amendment terms, casting upon the police a heavy burden of proving justification by exigent circumstances.” Verez v. Commonwealth, 230 Va. 405, 410, 337 S.E.2d 749, 752-53 (1985); Welsh, 466 U.S. at 750, 104 S.Ct. at 2097. Furthermore, “[e]xigent circumstances justify a warrantless entry ... only when the police have probable cause to obtain a search warrant.” Alexander v. Commonwealth, 19 Va.App. 671, 674, 454 S.E.2d 39, 41 (1995).
The trial judge found that the officers acted reasonably in entering the residence and denied the motion to suppress. His findings included the following:
There is no question or at least I haven’t heard any evidence that would cause the Court to believe that the first *265 call was not made by her complaining about the conduct of [McCracken]. The officers responded. When they got there, evidently a reasonable inference would be that ... Fields and [McCracken] had come to some sort of agreement. The officers testified that there was no fighting or arguing, that he was in the process of removing his property. He was cooperative, he was loading his vehicle, his personal items, some of his stereo equipment. The officers even assisted him. So there is no evidence of any ill feeling or ill will from the first call. But the fact remains that ... Fields called for help the first time.... Shortly thereafter, an hour or hour and a half later, a second call comes in. And the evidence is unrebutted that [McCracken] is back on her property where he was living with her. And the Jury has heard evidence that there was screaming on the outside, one of the officers heard it, the other one didn’t. Officer Sexton says he didn’t. And when they go inside of the house, the Court is of the opinion that that was reasonable. I mean, here you had a second call where the officers thought [McCracken] was leaving and was cooperative and left. Now he’s back on the scene. And the owner of the property is calling the officers again for assistance. They respond. They come in, they observe, they know there’s been prior problems.
We have held that a call to the police dispatcher for assistance does not, without more, give rise to probable cause to believe a crime is occurring. Id. at 674-75, 454 S.E.2d at 41. The evidence proved that when the police arrived in response to the first call from Fields, McCracken had made no threats. Indeed, Fields had not even expressed fear of McCracken when she first called the police dispatcher. She testified that when the dispatcher specifically “asked [her] if [McCracken] was hitting [her] or being physical,” she “told him no, that it was just verbal.” Although McCracken and Fields had had an argument, the officers testified that matters were peaceful and non-threatening.
The evidence also proved that when Fields called the police on the second occasion, McCracken had not arrived. Fields *266 knew the police dispatcher and told him “that [her problem with McCracken] was just verbal.” She testified that she reported no crime, that she expected no trouble from McCracken, and that she wanted the officers there because she had to go to work and did not want to be delayed by an argument with McCracken. Thus, she had not given the police dispatcher or the officers any basis to believe McCracken would do anything other than continue to gather his property. “Probable cause for police officers to enter a person’s [residence] must be based on more than speculation, suspicion, or surmise that a crime might be in progress.” Id. at 674, 454 S.E.2d at 41. The officers could not reasonably infer from either their first visit to the house or the call to return to the house that when McCracken returned to remove more of his property he either posed any threat to Fields or would commit a crime. Simply put, this evidence failed to prove the officer had probable cause to believe a crime had been or was being committed when he made the warrantless entry into the home.
Although the majority contends that McCracken had committed a trespass and had no expectation of privacy in the residence, no evidence supports that hypothesis. The Commonwealth never suggested at trial that McCracken committed a trespass or lacked standing. Moreover, the trial judge made no finding that McCracken committed a trespass or lacked standing. Indeed, prior to this hearing en banc, the Commonwealth never argued trespass or the lack of standing. I substantially agree, therefore, with the discussion in Part 1(A) of Judge Elder’s concurring and dissenting opinion that we have no basis to consider, in the first instance, these issues on appeal.
In addition, the evidence proved that when the prosecutor asked Fields, “who actually owns the home where this incident took place?,” Fields responded, “My father. He give it to me and my [minor] daughter.” Although the evidence did not indicate whether Fields and McCracken paid rent to Fields’ father, the evidence also did not prove McCracken had been barred by anyone from entering the house. Significantly, *267 Fields did not testify that she had barred McCracken from returning to the house. Instead, she testified she told the dispatcher, whom she knew, that McCracken had never physically abused her, and she further testified she wanted the police there solely to prevent another argument which would delay her departure to work. Indeed, when McCracken initially left with some of his possessions, Fields told the officers it was not necessary for her “to fill out any type of papers to keep each other away from each other.” The trial judge specifically found that Fields and McCracken “had come to some sort of agreement” before the officers initially arrived and before McCracken went to his mother’s residence. Thus, the evidence proved that when McCracken returned to the house in which he had lived for three years, he had not been barred from the premises, and he used his key to enter the house to gather his possessions. The assertions of trespass and lack of standing at this stage of the proceedings are an after the fact rationale unfounded by the evidence.
The principle is well established that “no amount of probable cause can justify a warrantless [entry into a home] ... absent ‘exigent circumstances.’ ” Coolidge v. New Hampshire, 403 U.S. 443, 468, 91 S.Ct. 2022, 2039, 29 L.Ed.2d 564 (1971); Payton, 445 U.S. at 590, 100 S.Ct. at 1382. “Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries.” Welsh, 466 U.S. at 750, 104 S.Ct. at 2097. The evidence proved that McCracken had never physically abused Fields and that she had no fear of him. Moreover, Fields did not tell the police dispatcher McCracken had threatened her. She testified she has known the dispatcher “for years” and told the dispatcher her only concern was the arguments. She merely wanted someone there to prevent another argument. Although the trial judge could believe the officer’s testimony that he heard argument and disbelieve Fields’ testimony that she and McCracken were not arguing, the mere occurrence of an argument is not indicative of a threat to life or serious injury. *268 The officer had no other basis to believe an emergency-existed. Indeed, the officers earlier had witnessed McCracken’s conduct at the home and testified that the situation was “peaceful.”
As in Shannon v. Commonwealth, 18 Va.App. 31, 34, 441 S.E.2d 225, 226, aff'd on reh’g en banc, 19 Va.App. 145, 449 S.E.2d 584 (1994), and Alexander, this evidence contains no basis upon which the police officers could have concluded that an emergency existed. Thus, the Commonwealth failed to meet its “heavy burden” of proving exigent circumstances existed justifying the warrantless entry. Alexander, 19 Va.App. at 674, 454 S.E.2d at 41.
III.
“At the very core [of the Fourth Amendment] stands the right of a [person] to retreat into his [or her] own home and there be free from unreasonable governmental intrusion.” Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 683, 5 L.Ed.2d 734 (1961). “It is axiomatic that the ‘physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.’ ” Welsh, 466 U.S. at 748, 104 S.Ct. at 2097 (citation omitted). “In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house.” Payton, 445 U.S. at 590, 100 S.Ct. at 1382. Thus, the Supreme Court has reiterated that it “held in Payton ... that a suspect should not be arrested in his house without an arrest warrant, even though there is probable cause to arrest him.” Minnesota v. Olson, 495 U.S. 91, 95, 110 S.Ct. 1684, 1687, 109 L.Ed.2d 85 (1990).
Unlike in United States v. Moore, 483 F.2d 1361, 1364 (9th Cir.1973), where “[t]he warrantless arrest was ... lawful, in itself,” id. at 1364, here it was not. The officer’s warrantless entry to McCracken’s residence presumptively was constitutionally unlawful, Payton, 445 U.S. at 586, 100 S.Ct. at 1380 and could not support an arrest even upon probable cause. See Olson and Payton. See also Horton v. California, 496 *269 U.S. 128, 137 n. 7, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990). The principle is well established and long standing that an unlawful, warrantless entry by a police officer into a residence renders void the power to arrest even if probable cause arises upon a discovery inside the residence after the unlawful entry. Johnson v. United States, 333 U.S. 10, 15-17, 68 S.Ct. 367, 369-371, 92 L.Ed. 436 (1948); Welsh, 466 U.S. at 748-50, 104 S.Ct. at 2096-98; Payton, 445 U.S. at 588-90, 100 S.Ct. at 1381-82. See also Jefferson v. Commonwealth, 27 Va.App. 1, 18, 497 S.E.2d 474, 482-83 (1998) (holding that the “arrest of appellant ... executed after the officer entered the curtilage of appellant’s home without a warrant ... violated the Fourth Amendment”). The purpose of these decisions, holding the arrests to be void, is “to protect [the] home from entry.” Olson, 495 U.S. at 95, 110 S.Ct. at 1687.
An officer gaining access to private living quarters under color of his office and of the law which he personifies must then have some valid basis in law for the intrusion. Any other rule would undermine “the right of the people to be secure in their persons, houses, papers, and effects,” and would obliterate one of the most fundamental distinctions between our form of government, where officers are under the law, and the police-state where they are the law.
Johnson, 333 U.S. at 17, 68 S.Ct. at 370 (footnote omitted).
“It has long been held in Virginia that where an officer attempts an unlawful arrest, the officer is an aggressor which gives the arrestee the right to use self-defense to resist so long as the force used is reasonable.” Brown v. Commonwealth, 27 Va.App. 111, 116-17, 497 S.E.2d 527, 530 (1998). This principle of law treats the unlawful arrest as an unauthorized touching and, thus, a battery against the attempted arrestee. The Supreme Court, therefore, has held that where an officer attempts an unlawful arrest, the arrestee “could resist with such reasonable force as was necessary to repel that being exercised by the officer in that undertaking.” Broaddus v. Standard Drug Co., 211 Va. 645, 652, 179 S.E.2d 497, 503 (1971). Thus, for example, in further contrast to Moore, where the Ninth Circuit indicated an arrestee may *270 only resist unlawful arrests that are the result of “bad faith, unreasonable force, or provocative conduct on the part of the arresting officer,” Moore, 483 F.2d at 1365, Virginia decisions hold that even if a police officer acts in “good faith” an arrestee may still resist an unlawful arrest. Brown, 27 Va.App. at 118, 497 S.E.2d at 530.
The evidence proved that McCracken initially resisted being searched and then attempted to maneuver his way around the officer after the officer sought to arrest him. Because the attempt to search and arrest McCracken was made after the officer had unlawfully entered the home without a warrant, McCracken had a right to use reasonable force to resist any of the officer’s conduct. The encounter escalated to a physical altercation only when the officer jumped onto McCracken’s back.
The events that gave rise to the search and arrest all occurred within the home, after the officers had unlawfully entered the home and upon the officer’s discovery of evidence within the home during that unlawful entry. This is precisely the circumstance the Supreme Court’s decision in Payton barred by holding that “ ‘physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.’” 445 U.S. at 585, 100 S.Ct. at 1379 (citation omitted). The rule in Payton was derived from the “overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic.” Id. at 601, 100 S.Ct. at 1388. By drawing a line at the entrance to a home, the Fourth Amendment protects the physical integrity of the home. As the Court noted in Johnson, “officers ... thrashing] themselves into a home is ... a grave concern not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance.” 333 U.S. at 14, 68 S.Ct. at 369. Based on the unlawful entry, McCracken was not unreasonable in his attempt to resist the unlawful arrest and did not use excessive force in resisting.
*271 IV.
For these reasons, I would hold that the officer’s warrant-less entry into the residence violated the Fourth Amendment. The officer’s unlawful entry negated his authority to search McCracken and make an arrest for events occurring inside the home.[5] Therefore, I would reverse all the convictions and dismiss the indictments. See Alexander, 19 Va.App. at 675, 454 S.E.2d at 41.

. Although I would hold that the officer’s warrantless entry was presumptively unlawful and negated his power to arrest, I agree with the portion of Part 1(B) of Judge Elder’s concurring and dissenting opinion which indicates that the circumstances did not provide the officer with a reasonable, articulable suspicion that McCracken was armed and dangerous. “An officer may not, simply by observing some item causing a ‘bulge’ in one’s clothing, conduct a general frisk where the nature of the bulge or the surrounding circumstances do not reasonably support the conclusion that ... the person is armed and dangerous.” Stanley v. Commonwealth, 16 Va.App. 873, 877, 433 S.E.2d 512, 515 (1993). As we noted in Stanley, these facts would impermissibly sanction an officer "in patting down anyone who happened to be carrying a checkbook or wallet in his pants pocket.” 16 Va.App. at 877, 433 S.E.2d at 515.