COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Elder, Frank and Beales
Argued by teleconference


COMMONWEALTH OF VIRGINIA

v.        Record No. 2276-12-3

BYRON HOWARD TURNER, III AND
 CYNTHIA MARIE BONDS

MEMORANDUM OPINION[*] BY
JUDGE ROBERT P. FRANK
MAY 14, 2013


FROM THE CIRCUIT COURT OF FLOYD COUNTY
David A. Melesco, Judge

Elizabeth C. Kiernan, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on briefs), for appellant.

Dennis E. Nagel for appellee Cynthia Marie Bonds.

No brief or argument for appellee Byron Howard Turner.


Pursuant to Code § 19.2-398(C), the Commonwealth appeals the trial court's suppression of

certain evidence obtained by the police upon entering the premises of Byron Howard Turner, III and

Cynthia Marie Bonds, appellees, without a search warrant.  For the reasons stated, we reverse and

remand for trial on the merits if the Commonwealth be so inclined.

BACKGROUND

In reviewing the Commonwealth's pretrial appeal, we view the evidence in the light most

favorable to Turner and Bonds, the prevailing parties below, and we grant all reasonable inferences

fairly deducible from that evidence.  Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407

S.E.2d 47, 48 (1991).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On November 29, 2011, Floyd County Deputy Sheriff D.L. Cook ("Cook"), assigned to the New River Regional Drug Task Force, received a telephone call from Marla Martinez ("Martinez"), a Floyd County child protective service worker. Martinez told Cook she was planning to investigate a complaint that children were living at appellees' trailer where methamphetamine was being manufactured. Cook and other officers of the Regional Task Force had previously received similar anonymous complaints that methamphetamine was being manufactured at the appellees' residence. Cook and Special Officer Garman then went with Martinez to the residence intending to conduct a "knock and talk."

Cook left his vehicle and walked to the front door of the trailer, knocked loudly, and waited for twenty to thirty seconds. Although he heard some movement inside, no one came to the door. Cook then looked into the large window that was immediately adjacent to the door. Through it Cook observed that the room was under construction, with a portion of the room's flooring removed. Believing no one could access the front door from inside the trailer, Cook walked along the trailer, heading for the back door on the opposite side.

Before he reached the back door, Cook saw a Coleman fuel bottle by the side of the trailer. Based on his training and experience,[1] Cook recognized the Coleman fuel bottle as a "precursor" to the manufacture of methamphetamine. Cook then noticed a trash burn pile approximately fifteen feet from the trailer's back door. Protruding from the edge of the burn pile was an intact clear plastic one-liter bottle. The bottle contained white "sludge" intermixed with dark particles. Based on his training and experience, Cook knew the white "sludge" to be ammonium nitrate, and the dark particles to be lithium – materials used in the "bottle method" of manufacturing methamphetamine.

---

[1] Cook testified that he has attended multiple drug conferences addressing methamphetamine labs and that he has participated in fifty drug investigations, mostly involving the "bottle method" of making methamphetamine. Appellee did not object to Cook's testimony as to the methods of manufacturing methamphetamine.

Believing he had discovered material used in the manufacturing of methamphetamine, Cook knocked on the rear door. Bonds answered the door, "very quickly, within seconds." As the door opened outwards toward Cook, he pulled the door open. Cook asked Bonds if anyone else was in the trailer. Bonds replied that her boyfriend or husband was in the trailer. From the outside, Cook could not see inside the trailer, not knowing if the other occupant was armed. While he was speaking to Bonds, Cook stepped into the trailer for his "own safety." Cook testified that he was concerned of the presence of weapons or chemicals associated with a methamphetamine lab.

At the suppression hearing, Special Officer Tim Stuart, a trained Site Safety Officer with the Drug Task Force, explained that the manufacture of methamphetamine using the "bottle method," or the "one pot method," includes the use of lithium strips, Coleman fuel, and a plastic bottle. These ingredients are dangerous individually as well as when combined, and if one adds water to the mixture, which is a common practice, the water can react with the lithium to cause a fire. When Coleman gas is present, explained Stuart, the fire can lead to an explosion.

Once inside, Cook saw Turner and advised both appellees he was going to obtain a search warrant. Cook asked "if there was anything inside the residence that would harm [his] officers, such as mixed chemicals, when they went inside to execute the search warrant." Turner replied, "yes there are a few mixed bottles back here." Cook and Special Officer Garman escorted Bonds and Turner from the trailer, and Cook left to obtain a search warrant.

Cook testified that people handling materials used to manufacture methamphetamine might be contaminated by those materials. He was instructed by the State Police to not allow those persons to leave the scene nor enter any police vehicle until they were decontaminated.

Cook did not conduct a search of the residence at that time, nor did he remove any items from the residence.

Cook obtained a search warrant[2] and returned to the property with the Virginia State Police Methamphetamine Cleanup Team to execute the warrant. The team conducted the search of the interior of the trailer. From inside the trailer, the team seized Coleman fuel, muriatic acid, lithium batteries, Drain Out, cold pack packages, plastic tubing, plastic bottles, and several jars.

The trial court found no Fourth Amendment violation prior to Cook entering the trailer. However, the trial court did not accept Cook's explanation of the purpose of his entry into the trailer, and ruled that the entry violated appellees' Fourth Amendment rights.

The trial court suppressed Turner's statement that was made before Cook obtained the search warrant, as well as all items seized pursuant to the search warrant.

This appeal follows.

ANALYSIS

In cases involving Fourth Amendment issues, "we give deference to the historical facts determined by the trial court, but we review *de novo* whether the legal standard of probable cause was correctly applied to the historical facts." Brown v. Commonwealth, 270 Va. 414, 419, 620 S.E.2d 760, 762 (2005). "The issue of whether an officer acted with probable cause and under exigent circumstances, however, is a mixed question of fact and law that we review *de novo*." Robinson v. Commonwealth, 273 Va. 26, 39, 639 S.E.2d 217, 224-25 (2007).

The Commonwealth argues that Cook's decision to enter the residence was supported by probable cause and exigent circumstances.[3] We agree with the Commonwealth.

---

[2] The affidavit supporting the search warrant included Turner's statement that "there are a few bottles back here" to establish probable cause.

[3] Appellee Bonds argues that at the suppression hearing the Commonwealth argued community caretaker doctrine and not exigent circumstances. In that regard, Bonds contends that the Commonwealth's current position on exigent circumstances is waived pursuant to Rule 5A:18 which states that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated with reasonable certainty at the time of the ruling . . . ." However, the Commonwealth's post-hearing memorandum on the motion to suppress expressly

- 4 -

"[P]robable cause exists when the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, alone are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed." Taylor v. Commonwealth, 222 Va. 816, 820, 284 S.E.2d 833, 836 (1981). The determination of probable cause by police officers depends upon "practical considerations of everyday life on which reasonable and prudent men," not legal technicians, act. Id. "In determining whether probable cause exists courts will test what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control." Hollis v. Commonwealth, 216 Va. 874, 877, 223 S.E.2d 887, 889 (1976) (citation omitted). Also, "[w]e evaluate the existence of probable cause under a standard of objective reasonableness." Cherry v. Commonwealth, 44 Va. App. 347, 357, 605 S.E.2d 297, 302 (2004).

In order to proceed further without obtaining a warrant, however, exigent circumstances are also required. Robinson, 273 Va. at 40, 639 S.E.2d at 225.

> No court has, to our knowledge, attempted to formulate a final and comprehensive list of all exigent circumstances which might justify a warrantless entry, but some of those considered relevant have been: (1) the degree of urgency involved and the time required to get a warrant; (2) the officers' reasonable belief that contraband is about to be removed or destroyed; (3) the possibility of danger to others, including police officers left to guard the site; (4) information that the possessors of the contraband are aware that the police may be on their trail; (5) whether the offense is serious, or involves violence; (6) whether officers reasonably believe the suspects are armed; (7) whether there is, at the time of entry, a clear showing of probable cause; (8) whether the officers have strong reason to believe the suspects are actually present in the premises; (9) the likelihood of escape if the suspects

---

raised exigent circumstances, and the trial court explicitly noted that it considered the Commonwealth's memorandum. Therefore, we will address that issue on appeal. "Arguments made at trial via written pleading, memorandum, recital of objections in a final order, oral argument reduced to transcript, or agreed written statements of facts shall, unless expressly withdrawn or waived, be deemed preserved therein for assertion on appeal." Code § 8.01-384(A); Moncrief v. Div. of Child Support, 60 Va. App. 721, 732 S.E.2d 714 (2012).

- 5 -

are not swiftly apprehended; and (10) the suspects' recent entry into the premises after hot pursuit.

Verez v. Commonwealth, 230 Va. 405, 411-12, 337 S.E.2d 749, 753 (1985). The Verez Court noted this list is not exhaustive and that these are merely relevant factors in the determination of whether sufficient exigent circumstances exist. Id.

A determination of whether exigent circumstances justify a warrantless entry is based on review of the "'circumstances as they reasonably appeared to trained law enforcement officers to exist when the decision to enter was made.'" Id. at 411, 337 S.E.2d at 753 (quoting Keeter v. Commonwealth, 222 Va. 134, 141, 278 S.E.2d 841, 846 (1981)). "The officers are not required to possess either the gift of prophecy or the infallible wisdom that comes only with hindsight." Keeter, 222 Va. at 141, 278 S.E.2d at 846. The officer's subjective intent is irrelevant. Washington v. Commonwealth, 60 Va. App. 427, 435, 728 S.E.2d 521, 525 (2012).

Based on this record, even viewing the evidence in the light most favorable to appellees, who prevailed at the suppression hearing, we conclude that the information known by Cook at the time of his warrantless entry into the residence supports a finding of probable cause and exigent circumstances.

Cook testified that he received a phone call from a social worker who was concerned that methamphetamine was being manufactured at this residence with children present. He had previously received several anonymous tips regarding the same illegal activity. While Cook was walking outside the residence, he observed a burn pile, Coleman fuel, and clear one-liter bottle. He explained that these items, when used together, indicate "possible methamphetamine labs." Based upon his training and experience, Cook had probable cause to believe that this residence was being used to manufacture methamphetamine. He therefore reasonably concluded that a criminal offense had been or was being committed.

- 6 -

Our inquiry then becomes one of whether exigent circumstances existed to justify Cook's entry into the residence without a warrant. We find that they did.

Before he entered the premises, Cook had observed makeshift equipment for manufacturing methamphetamine in the yard. When he knocked on the door earlier, he heard movement inside the trailer. He also observed a large window at the front of the residence, unobstructed by blinds or curtains, allowing the residents to look outside and ascertain his presence as a police officer. Appellee Bonds responded to the door within seconds of Cook knocking on the back door, suggesting to Cook that the residents did, in fact, know that he was present on their property. Methamphetamine is easily disposed of, and Cook was aware that the evidence could possibly be destroyed during the time he left the property to obtain a search warrant. In addition, Cook testified to the volatile nature of manufacturing methamphetamine. He held a reasonable concern that because the residents were manufacturing methamphetamine, the residents and/or responding officers could be injured at any time. Finally, based on information received from Martinez, Cook thought it possible that children could be present inside the residence. Protecting the safety of any children present was made even more urgent because, if any children were inside the residence, then they were also in close proximity to any methamphetamine production going on inside.[4]

Appellee Bonds argues that Cook created his own exigency by forcing himself inside the residence under a claim of providing for his own safety. We find no merit to this assertion. What created the exigent circumstances was not Cook's action, rather, it was his observation of evidence indicating the presence of a methamphetamine lab and the dangers attendant thereto, as well as the

---

[4] We do not suggest that exigent circumstances exist in every situation where police officers have probable cause to believe that a premises contains a methamphetamine manufacturing operation. See, e.g., United States v. Atchley, 474 F.3d 840, 851 n.6 (6th Cir. 2007) (rejecting the notion "that there should be a per se rule that whenever evidence of a methamphetamine laboratory is apparent, there is always exigency"). This opinion is limited to the specific facts of this case.

admitted presence of another person inside the trailer whom Cook could not see. Under all the facts and circumstances presented here, we do not find that any action on the part of Cook impermissibly created the exigency. See Kentucky v. King, 131 S. Ct. 1849, 1859 (2011) (rejecting the notion that officers may not rely on exigent circumstances if it was "reasonably foreseeable" that their lawful investigative tactics would create such circumstances).

## CONCLUSION

For the stated reasons, we find that Deputy Cook had probable cause and exigent circumstances to enter the premises without a warrant. The appellees' Fourth Amendment rights were not violated. Therefore, the judgment of the trial court is reversed and the case is remanded for trial on the merits if the Commonwealth be so inclined.

Reversed and remanded.