COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, AtLee and Chaney

FRED HARRIS, JR., ET AL.

MEMORANDUM OPINION* BY
v.      Record No. 1567-22-4          JUDGE MARY GRACE O'BRIEN
                                      APRIL 9, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Jeanette A. Irby, Judge[1]

(August McCarthy, on briefs), for appellants. Appellants
submitting on briefs.

(Scott C. Hook, Commonwealth's Attorney; Nichole Geisenhof,
Assistant Commonwealth's Attorney, on brief), for appellee.
Appellee submitting on brief.


Fred Harris, Jr., and Brenda Harris (the Harrises) appeal the court's ruling that their dogs

had been mistreated and were therefore forfeited to the care of an animal shelter, pursuant to Code

§ 3.2-6569. The Harrises argue that the court erred by denying their motion for a bill of particulars

and their motion to suppress. The Harrises also challenge the court's denial of their motion to

dismiss for violations of due process. Finally, they argue the court erred by failing to make separate

rulings for each dog in the final order.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Judge James E. Plowman, Jr., decided the Harrises' motions to suppress and for a bill of
particulars.

BACKGROUND

"In accordance with familiar principles of appellate review," we state the facts "in the light most favorable to the Commonwealth, the prevailing party at trial." *Scott v. Commonwealth*, 292 Va. 380, 381 (2016).

On April 14, 2022, Deputy Carter Cash of the Fauquier County Sheriff's Office went to the Harrises' home to investigate a report about a dog in distress. The Harrises' neighbor advised that the dog's tether was caught in the Harrises' fence and the dog was hanging over the fence by her neck. The neighbor rescued the dog, Diva, and tied her to the front of the fence. Deputy Cash observed that Diva was emaciated, and he was able to "see some of [her] bones . . . appearing through [her] skin."

Deputy Cash also saw a second dog, Ruger, jumping on and actively biting through the top planks of the fence. Deputy Cash observed blood stains on the fence and blood and cuts in Ruger's mouth. When the deputy approached Ruger to calm him, he saw a third dog, Roscoe, lying on his side in the backyard. Roscoe was "extremely . . . skinny," and Deputy Cash thought Roscoe was dead until the dog began to whimper. Roscoe could not stand. Deputy Cash called animal control for assistance.

Animal Control Sergeant Christopher Paris observed that Roscoe "appeared to be in distress" and "needed care and help as soon as possible." As Sergeant Paris walked through the backyard to retrieve Roscoe, he noticed that the dogs had no food or shelter and only one bowl of water. Sergeant Paris was trained to assess the "body score" of dogs on a scale of one through nine—with one being severely underweight, nine being severely overweight, and a "healthy range" being between a four and five. Sergeant Paris concluded that Roscoe was a two and a half, Diva was a two, and Ruger was a three. He added that Diva had very little "muscle or fat mass" and her ribs and spine were visible through her skin.

As Sergeant Paris drove the dogs to the shelter for veterinary care, Roscoe was howling. According to Sergeant Paris, it "was not a normal howl." The shelter director, a licensed veterinary technician, examined Roscoe upon the dog's arrival and observed that he was in distress and his "vocalization [was] not normal." Roscoe was "thrashing around," and his "eyes were rocking back and forth." The director concluded that Roscoe was having a seizure. The shelter veterinarian examined Roscoe the next morning. Roscoe was dehydrated, anemic, and still "actively seizing." The veterinarian was unable to stabilize Roscoe, and the dog was euthanized.

The shelter veterinarian also examined Diva and Ruger. Diva had "very little" fat reserves and had not been receiving adequate food. Both Diva and Ruger had intestinal parasites that had been left untreated. After remaining in the shelter's care, the dogs put on weight and were "healthy [and] happy" by the time of trial.

The Commonwealth began forfeiture proceedings against the Harrises in the general district court, pursuant to Code § 3.2-6569. After a hearing, the court ordered that the dogs were forfeited to the shelter's care. The Harrises appealed to the circuit court.

In circuit court, the Harrises moved for a bill of particulars "to assist [them] in preparing a [m]otion to [s]uppress." The Commonwealth opposed the motion, noting it had already presented its case regarding the circumstances of the dogs' seizure in general district court. The Commonwealth further represented that it had disclosed "all of the evidence that will be utilized in [the] case" to the Harrises. The court denied the motion, reasoning that the general district court proceedings and extensive discovery disclosures sufficiently informed the Harrises of the nature and character of the allegations. The court further found that the Harrises' argument that a bill of particulars would assist with preparing a motion to suppress was "superficial" and they were actually seeking to "constrain[] the Commonwealth."

The Harrises also moved to suppress the evidence, arguing that Deputy Cash and Sergeant Paris conducted an impermissible warrantless search and seizure in violation of the Fourth Amendment. The court found that the officers' actions did not violate the Fourth Amendment because the dogs were in "clear distress," in need of "immediate attention," and "clearly [in] an unsafe environment."

Following a trial, the court ruled that the dogs had been abandoned, cruelly treated, or had not been provided adequate care and were therefore forfeited. The court entered a final order on September 9, 2022.

On September 29, 2022, the Harrises filed a "Motion to Dismiss for Violations of Due Process," arguing that "the statutes on which [the case is] based" were unconstitutionally vague. The court denied the motion on October 25, 2022.

ANALYSIS

I. Motion for a Bill of Particulars

The Harrises first contend that the court erred by denying their motion for a bill of particulars.

As an initial matter, the Commonwealth argues that the statutes the Harrises rely on—Code §§ 19.2-266.2[2] and 19.2-230[3]—apply only to criminal proceedings, not civil forfeiture proceedings. We need not decide that issue, however, because even assuming without deciding that the statutes apply and the court erred by denying the motion, any alleged error was harmless. *See Commonwealth v. Kilpatrick*, 301 Va. 214, 216 (2022) ("In analyzing the decision of a lower

---

[2] Code § 19.2-266.2(C), in relevant part, provides, "To assist the defense in filing [certain pre-trial motions including to suppress evidence or to dismiss on the grounds of an unconstitutional statute] in a timely manner, the circuit court shall, upon motion of the defendant, direct the Commonwealth to file a bill of particulars pursuant to [Code] § 19.2-230."

[3] Code § 19.2-230, in relevant part, provides that "[a] court of record may direct the filing of a bill of particulars at any time before trial."

court, [an appellate court] . . . looks for 'the best and narrowest grounds available' for its decision, including harmless error." (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017))); *see also* Code § 8.01-678.

"An appellate court reviews a decision . . . where no federal constitutional issue was raised under the standard for non-constitutional harmless error provided in Code § 8.01-678." *Kilpatrick*, 301 Va. at 216-17 (quoting *Haas v. Commonwealth*, 299 Va. 465, 467 (2021)). Under that standard, we consider "the context of the entire case," *Montgomery v. Commonwealth*, 56 Va. App. 695, 704 (2010), and determine whether there has been "a fair trial on the merits" and if "substantial justice has been reached," Code § 8.01-678.

The Harrises argue that Code § 19.2-266.2(C) is "mandatory" and required the court to grant their motion because they represented that a bill of particulars would have assisted them in filing a motion to suppress[4]; however, the Harrises do not argue how the court's failure to order a bill of particulars deprived them of a fair trial or substantial justice, nor does the record reveal any such deprivation.[5] Indeed, it appears that the Harrises already possessed the information a bill of particulars would have provided. The Commonwealth had presented its case in the

---

[4] The Harrises also argue on appeal that a bill of particulars would have assisted them in filing a motion challenging the constitutionality of the forfeiture statute; however, they did not make this argument to the court until after the trial, and then only in a motion to reconsider the court's denial of their motion to suppress. Because the trial court did not have a meaningful opportunity to consider this argument and it was not timely made, we do not consider it. *See* Rule 5A:18; *Scialdone v. Commonwealth*, 279 Va. 422, 437 (2010) (noting that for an objection to be timely, it must be asserted "at a point in the proceeding when the trial court is in a position, not only to consider the asserted error, but also to rectify the effect of the asserted error" (quoting *Johnson v. Raviotta*, 264 Va. 27, 33 (2002))).

[5] The Harrises never specified what information they sought from a bill of particulars and merely made a general representation that they wanted to know "[h]ow [they] violated the applicable statutes" and "to understand what exactly the Commonwealth [was] alleging." Additionally, the Harrises conceded that part of their reason for seeking a bill of particulars was to bind the Commonwealth to a particular theory of the case. The record supports the court's finding that the Harrises' claim that a bill of particulars would have assisted them in filing a motion to suppress was "superficial."

general district court and disclosed "all of the evidence" it planned to present in the circuit court. *See Sims v. Commonwealth*, 28 Va. App. 611, 621 (1998) (finding that the defendant, who was advised at a preliminary hearing of the specific allegations against him, did not establish prejudice).

Nothing in the record supports a finding that the court's failure to order the Commonwealth to file a bill of particulars deprived the Harrises of a fair trial or substantial justice. Thus, any error was harmless.

## II. Motion to Suppress

The Harrises argue that the court erred by denying their motion to suppress. We need not decide whether the exclusionary rule applies to civil forfeiture cases because exigent circumstances justified the search of the Harrises' property and seizure of the evidence at issue. *See Esposito v. Va. State Police*, 74 Va. App. 130, 134-35 (2022) (declining to address an issue outside the scope of the "best and narrowest grounds" for resolving the appeal).

A claim that evidence was obtained in violation of the Fourth Amendment presents a mixed question of law and fact. *Merid v. Commonwealth*, 72 Va. App. 104, 108-09 (2020), *aff'd*, 300 Va. 77 (2021). We are bound by the trial court's factual findings unless plainly wrong or without supporting evidence, and we "give 'due weight to the inferences drawn from those facts by resident judges and local law enforcement officers,'" *White v. Commonwealth*, 73 Va. App. 535, 552 (2021) (quoting *Kyer v. Commonwealth*, 45 Va. App. 473, 479 (2005) (en banc)), "but independently decide whether, under the applicable law, the manner in which the challenged evidence was obtained satisfies constitutional requirements," *Shiflett v. Commonwealth*, 47 Va. App. 141, 145-46 (2005) (quoting *Jackson v. Commonwealth*, 267 Va. 666, 672 (2004)).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

Although "[w]arrantless searches and seizures . . . are presumptively unreasonable," courts recognize several exceptions to this "general rule," such as when exigent circumstances are present. *Bryant v. Commonwealth*, 72 Va. App. 179, 187-88 (2020) (alteration in original) (quoting *Glenn v. Commonwealth*, 275 Va. 123, 130 (2008)); *see also White*, 73 Va. App. at 553. This exception applies when "'the exigencies of the situation' make the needs of law enforcement so compelling that a warrantless search is objectively reasonable." *White*, 73 Va. App. at 553 (quoting *Ross v. Commonwealth*, 61 Va. App. 752, 759 (2013)).

"'To determine whether a law enforcement officer faced an emergency that justified acting without a warrant, [a c]ourt looks to the totality of circumstances,' examining those 'circumstances as they reasonably appeared to the law enforcement officers on the scene.'" *Id.* at 554 (alteration in original) (first quoting *Missouri v. McNeely*, 569 U.S. 141, 149 (2013); and then quoting *Verez v. Commonwealth*, 230 Va. 405, 411 (1985)). "[W]hether exigent circumstances exist to justify a warrantless search is not based on a retrospective analysis of the circumstances; rather, the inquiry is focused on review of the 'circumstances as they reasonably appeared to trained law enforcement officers . . . when the decision to [search] was made.'" *Id.* (third alteration in original) (quoting *Moreno v. Commonwealth*, 73 Va. App. 267, 276 (2021)). We consider "evidence adduced at both the trial and the suppression hearing" in examining the circumstances of the warrantless search. *Carlson v. Commonwealth*, 69 Va. App. 749, 758 (2019) (quoting *Greene v. Commonwealth*, 17 Va. App. 606, 608 (1994)).

The circumstances appearing to Deputy Cash and Sergeant Paris when they discovered the dogs, viewed in the light most favorable to the Commonwealth, permitted their warrantless entry into the backyard. All three dogs appeared in distress and in need of emergency aid. Diva was emaciated. Ruger had open, bloody cuts in his mouth. Most significant was Roscoe's apparent condition. Roscoe was emaciated and "appeared dead" to Deputy Cash until the dog

began to whimper and could not stand. Further, the officers' entry into the backyard did not extend beyond what was reasonably required to rescue the dogs. *See McCarthy v. Commonwealth*, 73 Va. App. 630, 643-44 (2021). The totality of these circumstances rendered the officers' actions objectively reasonable, and the court properly denied the Harrises' motion to suppress.

### III. Motion to Dismiss for Due Process Violations

The Harrises argue that the court erred by denying their post-trial "Motion to Dismiss for Violations of Due Process" because Code §§ 3.2-6500, 3.2-6569, and 3.2-6570 are unconstitutionally vague.[6] They contend that if there is "no objective standard to guide the trial court, and the evidence [is] in conflict, then the Commonwealth has not met its burden" and the evidence cannot be sufficient to support a finding that the Harrises violated the statutes. We are procedurally barred from considering the merits of these arguments, however, because the Harrises failed to timely raise them in the trial court and obtain a ruling while the court retained jurisdiction over the case. *See* Rule 5A:18; Rule 1:1.

"[G]rants of jurisdiction to circuit courts come with an expiration date." *Bailey v. Commonwealth*, 73 Va. App. 250, 260 (2021). Rule 1:1 provides that "[a]ll final judgments, orders, and decrees, irrespective of terms of court, remain under the control of the trial court and may be modified, vacated, or suspended for [21] days after the date of entry, and no longer." "Once a final judgment has been entered and the [21-]day time period of Rule 1:1 has expired, the trial court is thereafter without jurisdiction in the case." *Super Fresh Food Mkts. of Va., Inc. v. Ruffin*, 263 Va. 555, 563 (2002). "Neither the filing of post-trial or post-judgment motions, nor the trial court's taking such motions under consideration, nor the pendency of such motions

---

[6] The Harrises cite only their post-trial motion to dismiss to show where they claim to have preserved this assignment of error. *See* Rule 5A:20.

- 8 -

on the twenty-first day after final judgment, is sufficient to toll or extend the running of the [21-]day time period of Rule 1:1." *Id.* at 560.

Here, the final order was entered on September 9, 2022. The Harrises moved to dismiss the day before the expiration of the 21-day period, but the court did not rule on the motion until October 25, 2022—well after it had lost jurisdiction. Accordingly, the court's order denying the motion is a legal nullity. *See Bailey*, 73 Va. App. at 263-64.

Because the Harrises "failed to obtain a [valid] ruling on the arguments raised for the first time" in their post-trial motion, they leave us "with no decision of the circuit court on that issue to consider on appeal." *Id.* at 264; *see also Williams v. Commonwealth*, 57 Va. App. 341, 347 (2010) (holding that if an appellant does not obtain a ruling from the trial court, "'there is no ruling for [this Court] to review' on appeal, and his argument is waived under Rule 5A:18" (alteration in original) (quoting *Fisher v. Commonwealth*, 16 Va. App. 447, 454 (1993))). "Although Rule 5A:18 contains exceptions for good cause or to meet the ends of justice," the Harrises do not argue them, and we will not invoke the exceptions sua sponte. *Williams*, 57 Va. App. at 347.

### IV. Necessity for Separate Rulings

In their final assignment of error, the Harrises argue that the court erred by "failing to make separate rulings for each of the three dogs" in its final order, thereby "deny[ing] [them] the opportunity to understand the trial court's ruling." The Harrises did not raise this objection to the final order in the trial court, however, and so we do not consider it.[7] Rule 5A:18; *Pick v. Commonwealth*, 72 Va. App. 651, 665 n.4 (2021) (noting that "this Court does not consider

---

[7] The Harrises merely stated in their closing argument that the court should "make a separate decision for each animal," which, we note, it did. The court made detailed factual findings from the bench about each dog as it announced its ruling, in the Harrises' presence.

arguments raised for the first time on appeal" (quoting *Virostko v. Virostko*, 59 Va. App. 816, 827 (2012))).

CONCLUSION

For these reasons, we affirm the court's judgment.

*Affirmed.*